MDL 1596

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 31 2003

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| In re Zyprexa Litigation | ) ) ) ) ) ) ) ) ) | MDL No. _____ |

## DEFENDANT ELI LILLY AND COMPANY'S
## MOTION FOR TRANSFER OF ACTIONS TO SINGLE DISTRICT FOR
## CONSOLIDATED AND COORDINATED PRE-TRIAL PROCEEDINGS
## PURSUANT TO 28 U.S.C. § 1407(a)

      1.     Defendant Eli Lilly and Company ("Lilly") seeks to have all of the actions listed at Tab "A" of the Exhibit Volume transferred to the United States District Court for the Southern District of Indiana for consolidated and coordinated pre-trial proceedings as permitted by Section 1407(a) of Title 28 of the United States Code.

      2.     Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, a Schedule of Actions is submitted herewith as Tab "A" in the accompanying Exhibit Volume. Copies of the Complaints in the actions for which consolidation and coordination is sought are set forth at Tabs "B" through "I."

OFFICIAL FILE COPY

IMAGED JAN -5 '04

RECEIVED
CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION
2003 DEC 23 P 1: 34

3.      As set forth more fully in the accompanying Brief, in the past eleven months, at least eight separate actions have been filed raising product liability claims regarding Zyprexa®.

4.      Each of the actions contends that plaintiff ingested Zyprexa® and suffered personal injuries, including diabetes and pancreatitis.

5.      Most of the complaints are largely identical and allege causes of action against Lilly sounding in strict liability, negligence, breach of implied warranty, breach of express warranty, negligent misrepresentation and fraud by concealment.

6.      Named plaintiffs in five of the actions, Connie and John Ault, Carl and Linda Cooper, Barry McClamrock, Barbara Wilson and Carol Wright are represented by attorneys of one law firm.

7.      The majority of documents to be produced by defendant Lilly in each case will be identical.

8.      These documents are located in Indianapolis, Indiana.

9.      The witnesses who will testify as to the research and development of Zyprexa®, its regulatory history and marketing will be substantially similar in each of the several cases.

10.     These key witnesses reside in Indianapolis, Indiana.

11.     The expeditious resolution of these disputes would best be accomplished through coordinated discovery that would allow all plaintiffs greatest access to relevant documents.

12.     As demonstrated more fully in the accompanying Brief, consolidation of these actions for pretrial discovery proceedings will serve the convenience of the parties and

witnesses and promote the just and efficient conduct of the actions.  The questions of law and

fact as to the adequacy of the warnings for Zyprexa® are substantially identical in most of the

actions raised.  There is sufficient commonality in regulations and facts at issue that uniform

rulings on controlling issues will eliminate considerable duplicative litigation.

13.    The United States District Court for the Southern District of Indiana is the

most desirable forum for the pretrial proceedings because:

a.    It is the location of the majority of evidence in all of the actions;

b.    It is the location of the majority of witnesses in all of the actions.

14.    A copy of this Motion, the Brief in Support hereof and Exhibit Volume

was served on each party to each of the actions set forth in the Schedule of Actions, and a copy

has been filed in each District Court in which an action potentially affected by this motion is

pending.

Respectfully submitted,

Nina M. Gussack
Andrew R. Rogoff
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA  19103
(215) 981-4000

Attorneys for Defendant Eli Lilly and Company

Dated: December 22, 2003.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 3 1 2003

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| In re Zyprexa Litigation | ) ) ) ) ) ) ) ) ) | MDL No. _____ |

## DEFENDANT ELI LILLY AND COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR TRANSFER OF ACTIONS TO SINGLE DISTRICT FOR CONSOLIDATED AND COORDINATED PRE-TRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407(A)

I.   **INTRODUCTION**

Plaintiffs in seven federal districts have filed eight product liability actions alleging that the FDA-approved prescription medication Zyprexa*, manufactured by Eli Lilly and Company ("Lilly"), has caused death or serious bodily injuries. For the convenience of the parties and witnesses, and to promote the just and efficient pretrial conduct of multiple similar lawsuits, Lilly requests that these lawsuits be transferred to a single District, the Southern District of Indiana, for consolidated and coordinated pre-trial proceedings.

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2003 DEC 23   P 1: 34

RECEIVED
CLERK'S OFFICE

II.   **BACKGROUND**

    A.   **Factual Background**

On September 30, 1996, Lilly received approval from the Food and Drug Administration ("FDA") to market Zyprexa* based on FDA's determination that Zyprexa* is safe and effective for the treatment of schizophrenia.  More than three years later, on March 17, 2000, FDA concluded Zyprexa* is also safe and effective for the short-term treatment of acute manic episodes associated with Bipolar I Disorder and approved the marketing of Zyprexa* for that indication.  After more than 11 million patients had been treated with this medication, Lilly received the first of a series of lawsuits in which plaintiffs alleged that Zyprexa* caused injuries, including diabetes, diabetic ketoacidosis, diabetic coma and pancreatitis.

Lilly is headquartered in Indianapolis, Indiana.  The research and development of Zyprexa*, its labeling history and other interactions with the FDA have all been guided from there, from toxicological studies through clinical trials and years of continued study.  Records of patient experience, safety data from toxicologic and clinical trials, and related issues from clinical trials and post-marketing experience are stored in Indianapolis.

    B.   **Procedural History**

On January 7, 2003, Lilly received the first of at least eight complaints relating to allegations that Zyprexa* caused personal injuries.  Most of these complaints allege that Lilly is liable under theories of strict liability, negligence, breach of warranty, misrepresentation and fraud.  Many of the complaints refer to identical medical literature regarding Zyprexa* and diabetes.  In five of the eight cases, plaintiffs are represented by the same law firm.[1]  With public

---

[1] The Hersh & Hersh law firm states on its website, in a section dedicated to Zyprexa*, that "Attorneys are in the process of filing numerous other complaints," *http://www.hershlaw.com/news.html#zyprexa*, and has publicly stated that it is reviewing 30 additional cases.
*http://www.findarticles.com/cf_dls/m0EIN/2003_April_11/99926475/p1/article.jhtm.*

advertising campaigns underway, Lilly expects that more complaints will be filed. A copy of

each of the complaints is attached at Tabs B through I in the accompanying Exhibit Volume.

They include:

- Ault v. Eli Lilly and Company, et al., (Eastern District of Kentucky) where plaintiff complains that she ingested Zyprexa* and sustained injuries, including diabetes.

- Cooper v. Eli Lilly and Company, et al., (Eastern District of Kentucky) where plaintiff claims he ingested Zyprexa* and sustained injuries, including pancreatitis, diabetes and diabetic ketoacidosis.

- Folse v. Eli Lilly and Company, et al., (Western District of Louisiana) where plaintiff claims that Zyprexa*'s interaction with another medication caused plaintiff's decedent's death.

- McClamrock v. Eli Lilly and Company, et al., (Middle District of North Carolina) where plaintiff alleges that he ingested Zyprexa* and suffered injuries including diabetic coma and amputation related to diabetes.

- Phillips v. Eli Lilly and Company, et al., (Eastern District of Tennessee) where plaintiff contends that her daughter ingested Zyprexa* and suffered diabetes and diabetic ketoacidosis, which resulted in her death.

- Thompson v. County of Los Angeles, et al., (Central District of California) where a minor plaintiff alleges that Zyprexa* caused unspecified neurologic injuries.

- Wilson v. Eli Lilly and Company, et al., (Northern District of Ohio) where plaintiff alleges that she ingested Zyprexa* and suffered pancreatitis, diabetic ketoacidosis and diabetic coma.

- Wright v. Eli Lilly and Company, et al. (Eastern District of Virginia) where plaintiff alleges that her decedent ingested Zyprexa* and subsequently died.

Because all plaintiffs have alleged that Lilly failed to warn of Zyprexa*'s alleged

side effects, discovery will revolve around the clinical experience with Zyprexa* and Lilly's

knowledge regarding Zyprexa*'s safety profile. Discovery will also concern the research and

marketing of Zyprexa*. Further, depositions will involve numerous employees of Lilly who are

responsible for the development, testing and marketing of Zyprexa[x].  Given that the issue of

Zyprexa[x]'s safety profile will be central to all of these matters, consolidation is appropriate.

III.    **ARGUMENT**

The multidistrict litigation statute, 28 U.S.C. § 1407, encourages consolidation of

pretrial proceedings when (i) the lawsuits involve common questions of fact, (ii) consolidation

would serve the convenience of the parties and witnesses and (iii) consolidation would promote

the just and efficient conduct of the litigation.

A.    Consolidation Is Appropriate Here Because Common Issues Of Fact Predominate.

When pending actions present common questions of fact concerning the

development, testing, manufacturing and marketing of a drug and defendant's knowledge of that

drugs' alleged side effects, centralization is appropriate.  Id. at 1367.  In re Prempro Prod. Liab.

Litig., 254 F. Supp.2d 1366, 1367 (J.P.M.L. 2003).  Centralization is particularly appropriate

when the common factual issues include an alleged causal relationship between a drug and

serious side effects and the foreknowledge of the manufacturer.  In re Upjohn Co. Antibiotic

"Cleocin" Prods. Liab. Litig., 450 F. Supp. 1168, 1170 (J.P.M.L. 1978), In re Meridia Prod.

Liab. Litig., 217 F. Supp.2d 1377, 1378 (J.P.M.L. 2002).  Here, the pending cases involve

common questions of fact involving Zyprexa[x]'s safety and the adequacy of Lilly's warnings

regarding adverse events, particularly diabetes and related complications.   Consolidation of

these cases is, therefore, appropriate.

B.    Consolidation Would Serve the Convenience of the Parties and Witnesses.

Consolidation of separate cases involving common issues of fact serves the

convenience of the parties and witnesses, and it serves to conserve the resources of the parties

and the judiciary.  In re Meridia, 217 F. Supp.2d at 1378.  Currently, the pending federal cases

are geographically diverse, ranging from North Carolina to California.  Centralizing the

discovery process would serve the convenience of the parties in these disparate areas. Most of the witnesses who developed the medication, supervised clinical trials or were responsible for developing the marketing strategy for Zyprexa®, reside in Indiana. Nearly all of the documentary evidence regarding the development, testing, manufacturing and marketing of Zyprexa® is located in Indiana. Indiana's central location would also serve the convenience of the parties. Thus, consolidation in the Southern District of Indiana is appropriate.

        C.        <u>Consolidation Would Promote Just and Efficient Conduct of the Litigation.</u>

Consolidation serves to eliminate duplicative discovery, avoid inconsistent pre-trial rulings and conserve the resources of counsel, the parties and the judiciary. <u>In re Fleming Companies, Inc. Sec. & Derivative Litig.</u>, No. 1530, U.S. Dist. LEXIS 11029, at *3 (J.P.M.L. June 25, 2003). Consolidation prevents duplication of discovery and avoids repetitive or inconsistent pretrial rulings. <u>In re Meridia</u>, 217 F. Supp.2d at 1378. In these matters, discovery is at an early stage. Plaintiffs have served discovery upon Lilly in one case. In response to a large portion of that discovery, Lilly has referred plaintiffs to the voluminous Zyprexa® regulatory submissions to FDA, the Investigational New Drug Application ("IND") and New Drug Application ("NDA") files. These files, which are stored in Indianapolis pursuant to federal law, contain records pertaining to the manufacture, toxicology, preclinical and clinical experience, adverse events, testing, labeling and marketing of Zyprexa®. Issues of confidentiality, discoverability and relevance have not yet been decided. Consolidation would eliminate duplicative proceedings in separate geographical forums and allow for uniform decisions on these common issues.

IV.    **CONCLUSION**

For the foregoing reasons, Lilly requests that the Zyprexa® litigation be transferred to the Southern District of Indiana for consolidated and coordinated pretrial proceedings.

Respectfully submitted,

Nina M. Gussack
Andrew R. Rogoff
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA  19103
(215) 981-4000

Attorneys for Defendant Eli Lilly and Company

Dated: December 22, 2003.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 31 2003

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

I, Matthew J. Hamilton, hereby certify that on December 22, 2003, I caused to be

served a true and correct copy of the foregoing Motion for Transfer, the Brief in Support thereof,

Corporate Disclosure Statement and Exhibit Volume upon the following by FedEx, overnight

delivery to the District Courts and via United States Mail, First Class postage prepaid to counsel

and unrepresented parties.

## DISTRICT COURTS

Clerk of the Court, Central District of California

Office of the Clerk
United States Federal Courthouse
312 North Spring Street
Los Angeles, California 90012

Clerk of the Court, Southern District of Iowa

Office of the Clerk
P. O. Box 9344
Des Moines, IA 50306-9344

Clerk of the Court, Eastern District of Kentucky

Leslie G. Whitmer, Clerk
101 Barr St. Room 206
P.O. Drawer 3074
Lexington, KY 40588-3074

Shirley Allen, Deputy-in-Charge
310 S. Main Street
P.O. Box 5121
London, KY 40745-5121

Clerk of the Court, Western District of Louisiana

Robert H. Shemwell, Clerk
Office of the Clerk
United States District Court, Suite 2100
800 Lafayette Street
Lafayette, LA  70501

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
2003 DEC 23  P 1:34
RECEIVED
CLERK'S OFFICE

Clerk of the Court, Middle District of North Carolina

John S. Brubaker, Clerk
Office of the Clerk
U.S. District Court
Middle District of North Carolina
P.O. Box 2708
Greensboro, NC  27402-2708

Clerk of the Court, Northern District of Ohio

Office of the Clerk
United States Federal Courthouse
1716 Spielbusch Avenue
Toledo, Ohio 43624

Clerk of the Court, Eastern District of Tennessee

Office of the Clerk
United States District Court, Knoxville
800 Market Street, Suite 130
Knoxville, TN  37902

Clerk of the Court, Eastern District of Virginia

Office of the Clerk
Walter E. Hoffman
United States Courthouse
600 Granby Street
Norfolk, VA 23510

## COUNSEL

Counsel in Ault v. Eli Lilly and Company

Justin R. Morgan, Esq.
David H. Abney, II, Esq.
The Morgan Law Firm, PLLC
201 West Vine Street
Lexington, KY 40507
**Counsel for Plaintiffs John and Connie Ault**

Nancy Hersh, Esq.
Rachel H. Abrams, Esq.
Mark E. Burton, Jr., Esq.
Hersh & Hersh
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, CA 94102-6388
**Counsel for Plaintiffs John and Connie Ault**

J. Clarke Keller, Esq.
Garland H. Barr, IV, Esq.
Stites & Harbison, PLLC
250 West Main Street
Suite 2300
Lexington, Kentucky 40507-2300
**Counsel for Defendant Eli Lilly and Company**

Counsel in Cooper v. Eli Lily and Company

Justin R. Morgan, Esq.
David H. Abney, II, Esq.
The Morgan Law Firm, PLLC
201 West Vine Street
Lexington, KY 20407
**Counsel for Plaintiffs Carl and Linda Cooper**

Nancy Hersh, Esq.
Rachel H. Abrams, Esq.
Mark E. Burton, Jr., Esq.
Hersh & Hersh
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, CA 94102-6388
**Counsel for Plaintiffs Carl and Linda Cooper**

J. Clarke Keller, Esq.
Garland H. Barr, IV, Esq.
Stites & Harbison, PLLC
250 West Main Street
Suite 2300
Lexington, Kentucky 40507-2300
**Counsel for Defendant Eli Lilly and Company**

Counsel in Folse v. Eli Lilly and Company

Benjamin P. Mouton, Esq.
John G. Allelo, Esq.
McGlynn, Glisson & Koch
340 Florida Street
P.O. Box 1909
Baton Rouge, LA 70821
**Counsel for Plaintiff Charlene H. Folse**

Elizabeth Haecker Ryan, Esq.
Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P.
3200 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3200
**Counsel for Defendant Forest**

Joseph P. Thomas, Esq.
Jennifer L. Snyder, Esq.
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202-2409
**Counsel for Defendant Forest**

D.C. Panagiotis, Esq.
D.C. Panagiotis, Ltd.
FNB Towers
600 Jefferson St. Ste 603
Lafayette, LA 70501
**Counsel for Defendant Eli Lilly and Company**

Counsel in McClamrock v. Eli Lilly and Company

Kieran J. Shanahan, Esq.
Shanahan Law Group
207 Fayetteville Street Mall
Raleigh, NC 27601
**Counsel for Plaintiff Barry McClamrock**

J. Pierre Tismo, Esq.
Sanders, Tismo and Associates, P.S.C.
The Charles H. Fisk House
1017 Russell Street
Covington, KY 41011-3052
**Counsel for Plaintiff Barry McClamrock**

Rachel B. Abrams, Esq.
Mark E. Burton, Jr., Esq.
Hersh & Hersh
601 Van Ness Avenue
2080 Opera Plaza
San Francisco, CA 94102-6388
**Counsel for Plaintiff Barry McClamrock**

Bradley M. Risinger, Esq.
Smith Moore LLP
2800 Two Hannover Square
Post Office Box 27525 (27611)
Raleigh, NC 27601
**Counsel for Defendant Eli Lilly and Company**

Jon Berkelhammer, Esq.
L. Cooper Harrell, Esq.
Smith Moore LLP
300 North Greene Street, Suite 1400
Post Office Box 21927 (27420)
Greensboro, NC 27401
**Counsel for Defendant Eli Lilly and Company**

Counsel in Phillips v. Eli Lilly and Company

David C. Lee, Esq.
Dan Stanley, Esq.
The Lee Building
422 South Gay Street
Knoxville, TN 37929
**Counsel for Plaintiff Estate of Sonya Denise Phillips**

Jon Roach, Esq.
Benjamin Lauderback, Esq.
Riverview Tower
900 South Gay Street, Suite 1500
Knoxville, TN 37901
**Counsel for Dr. Thomas Boduch, M.D.**

Bruce Anderson, Esq.
Tyson Place, Suite 130
2607 Kingston Pike
Knoxville, TN 37019
**Counsel for Ridgeview Psychiatric Hospital**

Wynne C. Hall, Esq.
Matthew J. Evans, Esq.
Paine, Tarwater, Bickers, and Tillman, LLP
800 South Gay Street
1100 First Tennessee Plaza
Knoxville, TN 37929
**Counsel for Kathleen Sales, M.D.**

Francis L. Lloyd, JR., Esq.
Lori M. Ritter, Esq.
London & Amburn, P.C.
1716 Clinch Avenue
Knoxville, TN 37916
**Counsel for Robert M. Dukes, M.D.**

Gary M. Prince, Esq.
O'Neil, Parker & Williamson
416 S.W. Cumberland Avenue
Knoxville, TN 37902
**Counsel for Roane County, Ken Yager, David Haggard, Fay Hall, Linda Mayes, John Mayes, Kelly Jackson, Cathey Goss, Thomas Pio, Sandra Miller, Stacee French, Lynda Carter, Stephen Halcomb, Deborah R. Gibson, Officer Rymer, Officer Rittenhouse, Officer Melton, Officer Belcher, Ambulance Service of Roane County, Gloria Wright, Howie Rose and Paramedic D. Tipton.**

Melinda Meador, Esq.
Bass, Berry & Sims
900 S. Gay Street, Suite 1700
Knoxville, TN 37902
**Counsel for Defendant Eli Lilly and Company**

Counsel in Thompson v. Eli Lilly and Company

Dale K. Galipo, Esq.
Law Offices of Dale K. Galipo
21800 Burbank Blvd., Ste. 310
Woodland Hills, CA 91367
**Counsel for Plaintiff Janetta Thompson**

Jon F. Monroy, Esq.
Jennifer E. Gysler, Esq.
Monroy, Averbuck & Gysler
The Landing, Suite 301
32123 Lindero Canyon Road
Westlake Village, CA 91361
**Counsel for Defendants County of Los Angeles,**
**Imitiaz S. Basrai, M.D., and Doctor Rendon**

Janet H. Kwon, Esq.
Colleen T. Davies, Esq.
Reed, Smith, Crosby, Heafey
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071
**Counsel for Defendant Eli Lilly and Company**

Counsel in Wilson v. Eli Lilly and Company

Rachel B. Abrams, Esq.
Mark E. Burton, Jr., Esq.
Hersh & Hersh
601 Van Ness Avenue
2080 Opera Plaza
San Francisco, CA  94102-6396
**Counsel for Plaintiff Barbara Wilson**

J. Pierre Tismo, Esq.
Sanders, Tismo and Associates, P.S.C.
The Charles H. Fisk House
1017 Russell Street
Covington, KY  41011-3052
**Counsel for Plaintiff Barbara Wilson**

Robin G. Weaver, Esq.
Andrew Agati, Esq.
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114-1304
**Counsel for Defendant Eli Lilly & Company**

Counsel in Wright v. Eli Lilly and Company, et al.

William B. Kildruff, Esq.
Emroch & Kilduff, LP
3600 W. Broad Street, Suite 700
P.O. Box 6875
Richmond, VA  23230-0856

Mark E. Burton, Jr., Esq.
Rachel Abrams, Esq.
Hersh and Hersh
601 Van Ness Avenue, Suite 2080
San Francisco, CA  94120-6396
**Counsel for Plaintiff Carol Wright**

A. William Charters, Esq.
Goodman, Allen & Filetti, PLLC
Harbour Place
215 Brooke Avenue, Suite A
Norfolk, VA  23510
**Counsel for Maryview Medical Center d/b/a Maryview Behavioral Medical Center**

Rodney S. Dillman, Esq.
Hancok, Daniel, Johnson & Nagle, P.C.
One Columbus Center
283 Constitution Drive, Suite 301
Virginia Beach, VA  23462-6760
**Counsel for Churchland Psychiatric Associates, Inc. and E. Daniel Kay, M.D.**

Psychiatric Associates of Chesapeake, P.C.
c/o Basnight, Kincer & Leftwich, P.C., Registered Agent
308 Cedar Lakes Drive
Chesapeake, VA 23322
**Defendant**

Igor Magier, M.D.,
312 Cedar Lakes Drive
Chesapeake, VA  23322
**Defendant**

Astrazeneca Pharmaceuticals, LP
725 Chesterbrook Boulevard
Wayne, PA  19087
**Defendant**

_____
Matthew J. Hamilton

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 3 1 2003

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re Zyprexa Litigation | ) ) ) ) ) ) ) ) ) | MDL No. _____ |

## DEFENDANT ELI LILLY AND COMPANY'S
## MOTION FOR TRANSFER OF ACTIONS TO SINGLE DISTRICT FOR
## CONSOLIDATED AND COORDINATED PRE-TRIAL PROCEEDINGS
## PURSUANT TO 28 U.S.C. § 1407(a)

### EXHIBIT VOLUME

Defendant Eli Lilly and Company submits the following in support of its Motion

to Transfer to a Single District for Consolidated and Coordinated Pre-Trial Proceedings:

A.　　Schedule of Actions to be Consolidated and Coordinated.

B.　　Complaint, Ault v. Eli Lilly and Company, et al., Eastern District of

Kentucky, Civil Action No. 03-166-KSFC.

C.　　Complaint, Cooper v. Eli Lilly and Company, et al., Eastern District of

Kentucky, Civil Action No. 03-422-DCRD.

2003 DEC 2 P 1: 35
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

RECEIVED
CLERK'S OFFICE

D.      Complaint, <u>Folse v. Eli Lilly and Company, et al.</u>, Western District of Louisiana, Civil Action No. 6:03CV1888.

E.      Complaint, <u>McClamrock v. Eli Lilly and Company, et al.</u>, Middle District of North Carolina, Civil Action No. 1:03CV00929.

F.      Complaint, <u>Phillips v. Eli Lilly and Company, et al.</u>, Eastern District of Tennessee, Civil Action No. 3:00-CV-693.

G.      Complaint, <u>Thompson v. County of Los Angeles, et al.</u>, Central District of California, Civil Action No. CV03-7641 (PJWx)

H.      Complaint, <u>Wilson v. Eli Lilly and Company, et al.</u>, Northern District of Ohio, Civil Action No. 3:03cv7202.

I.      Complaint, <u>Wright v. Eli Lilly and Company, et al.</u>, Eastern District of Virginia, Civil Action No. Pending.

A

## SCHEDULE OF ACTIONS

| Name of Action | District Court and Division | Civil Number | Judge (if assigned) |
|---|---|---|---|
| Connie Ault and Johns Ault v. Eli Lilly and Company and Does One through Fifteen, inclusive | Eastern District of Kentucky, Lexington Division | Civ. Action No. 03-166-KSF | Hon. Karl S. Forester |
| Carl Cooper and Linda Cooper v. Eli Lilly and Company, Does, One thru Fifteen, and Gregory Sherry, M.D. | Eastern District of Kentucky, London Division | 03-422-DCR | Hon. Danny C. Reeves |
| Charlene H. Folse, individually and on behalf of her minor child, Joshua James Lee Folse v. Eli Lilly and Company, Forest Laboratories Inc. and Forest Pharmaceuticals, Inc. | Western District of Louisiana | 6:03CV1888 | Hon. Rebecca F. Doherty |
| Barry McClamrock v. Eli Lilly and Company | Middle District of North Carolina | 1:03CV00929 | Hon. James A. Beaty |
| Estate of Sonya Denise Phillips by Carolyn Phillips, mother, next friend and custodian of decedent Sonya Phillips' minor children: Shumai'Kee Phillips, Tashanti Phillips and Tahiji Phillips v. Roane County, David Haggard, Sheriff of Roane County, in his official and individual capacity, Faye Hall, in her official and individual capacity as head jailer in Roane County, Ken Yager, Roane County Executive in his official and individual capacity, Linda Mayes, in her official and individual capacity as jailer in Roane County, John Mayes, in his official and individual capacity as jailer in Roane County, Kelly Jackson, in her official and individual capacity as jailer in Roane County, Cathy Goss, in her official and individual capacity as jailer in Roane County, Thomas Pio, in his official and individual capacity as jailer in Roane | Eastern District of Tennessee | Civil No. 3:00-CV-692 2 | Hon. Thomas A. Varlan |

MULTIDISTRICT LITIGATION
JUDICIAL PANEL ON

RECEIVED CLERK'S OFFICE
2003 DEC 23  P 1: 35

| | | | |
|---|---|---|---|
| County, Sandra Miller, in her official and individual capacity as jailer in Roane County, Stacee French, in her official and individual capacity as jailer in Roane County, Lynda Carter, in her official and individual capacity as jailer in Roane County, Stephen Halcomb, in his official and individual capacity as jailer in Roane County, Deborah R. Gibson, in her official and individual capacity as jailer in Roane County, Corrections Officer Rymer, in his/her official and individual capacity as jailer in Roane County, Corrections Officer Rittenhouse, in his/her official and individual capacity as jailer in Roane County, Corrections Officer Belcher, in his/her official and individual capacity as jailer in Roane County, John Doe, in his official and individual capacity as jailer in Roane County, Ambulance Service of Roane County, Robert Dukes, M.D., in his official and individual capacity as medical director of ASRC, Howie Rose, in his official and individual capacity as employee and agent of ASRC, Paramedic D. Tipton, in his/her official and individual capacity as employee and agent of ASRC, John Doe, in his/her official and individual capacity as employee and agent of ASRC, Thomas Boduch, M.D, in his official and individual capacity as Roane County jail medical doctor, Gloria Wright, Administrative Director of Ambulance Service of Roane County and in her individual capacity, Ridgeview Psychiatric Hospital, John Does, agents, servants, employees or contractors of Ridgeview Psychiatric Hospital and Center, Inc., Kathleen Sales, and Eli Lilly and Company. | | | |
| Jenetta Thompson; Jenetta Thompson as Guardian ad Litem for Ryan A. Riley; Sammy Thompson; Connie Taylor v. County of Los Angeles, Doctor Rendon; Sherry Brown, Imitiaz S. Basrai, M.D., Eli Lilly and Company, Does 1 through 25, | Central District of California | No. CV03-7641 (PJWx) | Hon. Percy Anderson |

| | | | |
|---|---|---|---|
| inclusive | | | |
| Barbara Wilson v. Eli Lilly and Company and Unidentified Defendants "Does" One through Fifteen | Northern District of Ohio, Western Division | No. 3:03cv7202 | Hon. David A. Katz |
| Carol Wright, Administratrix of The Estate of Latonya P. Wright, Deceased v. Eli Lilly and Company, Astrazeneca Pharmaceuticals, LP, Psychiatric Associates of Chesapeake, P.C., Igor Magier, M.D., Maryview Medical Center d/b/a Maryview Behavioral Medical Center, Churchland Psychiatric Associates, Inc. and E. Daniel Kay, M.D. | Eastern District of Virginia, Norfolk Division | ~~Pending~~ 2:03-888 | Pending |

B

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL ACTION NO. 03-C1-011 11

MAR 1 4 2003

CONNIE AULT and
JOHNS AULT

PLAINTIFFS

v.

ELI LILLY AND COMPANY, and
        Serve:
                National Registered Agents, Inc.
                400 West Market Street
                Suite 1800
                ~~Louisville, Kentucky 40202~~

DOES ONE through FIFTEEN, inclusive

DEFENDANTS

## COMPLAINT

Come the Plaintiffs, Connie Ault and John Ault, by and through counsel, and for their claims and causes of action against the Defendants herein states as follows:

1.    Plaintiffs Connie Ault and John Ault are and were at all times relevant hereto residents of Lexington, Fayette County, Kentucky.

2.    Defendant ELI LILLY AND COMPANY and DOES ONE through FIFTEEN, inclusive, and each of them, is and was a corporation doing business in the Commonwealth of Kentucky with a primary place of business of Lilly Corporate Center, Indianapolis, Indiana, 46161 and whose Agent for purposes of Service of Process is National Registered Agents, Inc., 400 West Market Street, Suite 1800, Louisville, Kentucky 40202.    Plaintiffs do not know the true names of the Defendants sued herein as DOES ONE through FIFTEEN, inclusive. Plaintiffs allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein

Page No. 1

A True Copy
ATTEST: WILMA F. LYNCH, CLERK
    FAYETTE CIRCUIT COURT

By: Kara Barker Deputy

alleged, and caused the injuries and damages sustained by Plaintiffs, as herein alleged.

4.    At all times relevant hereto, each of the Defendants were the agent and employee of every other Defendant in doing the acts herein alleged, and were, at all times, acting within the purpose and scope of said agency and employment and all of said acts and conduct were ratified and approved by said Defendants.  Plaintiffs believe that one or more of Defendants Doe One through Fifteen may be or may have been agents of Defendant Eli Lilly who were employed to disseminate information pertaining to Zyprexa and encourage the writing of prescriptions for Zyprexa by physicians.

5.    At all times relevant hereto, Defendant ELI LILLY designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as ZYPREXA (also known as OLANZAPINE).

6.    Plaintiff CONNIE AULT's physicians prescribed ZYPREXA for treatment of Plaintiff's post-traumatic stress disorder. Plaintiff CONNIE AULT ingested these products and sustained serious injuries, including diabetes.

7.    As a direct, proximate and legal result of Defendants negligent, wantoned reckless and outrageous conduct, Plaintiff CONNIE AULT suffered injuries all to Plaintiff's general damage in a sum in excess of the jurisdictional limit of this Court.

8.    As a direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff CONNIE AULT was required to, and did, employ physicians and surgeons to examine, treat, and care for her, and therefore Plaintiff incurred medical and incidental expenses.

Page No. 2

As a further direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiffs CONNIE AULT and DANIEL AULT were prevented from attending to their usual occupations, and thereby sustained loss of earnings.

9.    ZYPREXA is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of schizophrenia and bipolar mania. ZYPREXA, although only approved by the FDA to treat schizophrenia and bipolar mania, was prescribed to Plaintiff for treatment of her post-traumatic stress disorder.

10.    At all times relevant hereto, the DEFENDANTS themselves, through their agents, or by use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn and otherwise distributed ZYPREXA.

11.    ZYPREXA has been widely advertised by the DEFENDANTS as effective treatment for bipolar disorder and schizophrenia, with fewer adverse side effects than other treatments. The DEFENDANTS further induced physicians to prescribe ZYPREXA for treatment of conditions for which the FDA had not approved ZYREXA, specifically  including post-traumatic stress disorder.

12.    The DEFENDANTS, beginning in 1996, aggressively marketed and sold ZYPREXA by falsely misleading potential users about the product and by failing to protect users from serious dangers which the Defendants knew or should have known to result from use of ZYPREXA.

13.    The DEFENDANTS widely and successfully marketed ZYPREXA in the United States, and in the State of Kentucky.  The DEFENDANTS undertook advertising campaigns promoting ZYPREXA in order to induce widespread use of the product.

14.    The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently created the image and impression that the use of ZYPREXA, was safe for human use, had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder and schizophrenia, as well as other disorders such as post-traumatic stress disorder.

15.    The DEFENDANTS, and each of them, purposefully minimized and understated health hazards and risks associated with ZYPREXA. The DEFENDANTS, through promotional literature, deceived potential users of ZYPREXA and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. The DEFENDANTS, falsely and fraudulently withheld relevant information from potential users of ZYPREXA.

16.    Plaintiffs are informed, believe, and allege that total profits from the sale of ZYPREXA exceed one hundred millions dollars.

17.    Beginning in 1998, the medical literature, specifically an indicative report published on October 15, 1998, in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes," conclusively linked ZYPREXA to causing diabetes. Other numerous reports and studies, prevalent throughout the medical literature from 1998 through the present, detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis, as well as many other undisclosed risks. On July 1, 2002, Duke University Medical Center issued a Press Release about the recent finding that linked ZYPREXA to early onset diabetes. The researchers identified 289 cases of diabetes in patients who had been prescribed ZYPREXA. These findings

were published on July 2, 2002 in the medical journal Pharmacotherapy, Vol. 22, No. 7, pages 841-52. The known danger that the DEFENDANTS said product ZYPREXA was causing hyperglycemia and diabetes was never indicated by said DEFENDANTS to Plaintiff CONNIE AULT's physician who prescribed the product to Plaintiff. Plaintiff CONNIE AULT was ignorant of said defect of said product prior to ingesting ZYPREXA.

18.    The physician who prescribed ZYPREXA to Plaintiff CONNIE AULT relied on the representations made to her by the DEFENDANTS, and each of them, prior to the date of prescribing ZYPREXA for use.  The physician relied on the representations regarding the safety of ZYPREXA, and would not have recommended for use or prescribed ZYPREXA if she had known the true facts regarding the safety of ZYPREXA.

19.    Prior to the date upon which the aforesaid product was prescribed to Plaintiff CONNIE AULT, the DEFENDANTS knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose.  The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, diabetes, ketoacidosis or pancreatitis and other injuries. The DEFENDANTS, and each of them failed to take appropriate action to cure the nature of these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

20.    The DEFENDANTS thereby acted with malice towards Plaintiffs, who accordingly request that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future.  The aforesaid wrongful conduct was

done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendant.

21.    As a result of the herein described conduct and/or product of Defendants, and each of them, Plaintiff JOHN AULT sustained injuries and damages as a result of the loss of the love, affection, care, society, attention, services, and support of Plaintiff CONNIE AULT, in an amount in excess of the jurisdictional limit this Court.

## COUNT ONE

22.    At all times relevant hereto mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by DEFENDANTS and ingested by Plaintiff CONNIE AULT.  The aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of ZYPREXA, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects.

23.    The product was also defective in that the product manufactured and distributed differed from the manufacturer's intended results.  These defects caused serious injuries to the Plaintiff when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended by Defendants, and each of them.

24.    The Defendants, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein.

25.    The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder and/or schizophrenia, involved substantial dangers not readily recognizable by the ordinary user of the product. The Defendants, and each of them failed to warn of the known or knowable likelihood of injury including but not limited to the likelihood the user would develop diabetes.

26.    The ZYPREXA designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors by Defendants, was further defective due to inadequate post-marketing warning or instruction because, after Defendants, knew or should have known of the risks of injury from ZYPREXA, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to causing diabetes.

27.    Plaintiffs did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the herein described injuries and damages as herein alleged.

28.    The Defendants, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

29.    Plaintiffs neither knew, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defect.

## COUNT II

30.    Plaintiff reiterates and restates all allegations contained in paragraphs 1

through 29 above, as if fully set forth herein.

31.    The ZYPREXA manufactured and/or supplied by Defendants, was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

32.    Alternatively, the ZYPREXA manufactured and/or supplied by Defendants, was defective in design or formulation in that when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than an ordinary consumer ~~would expect and more dangerous than other forms of treatment for bipolar~~ disorder and schizophrenia, as well as treatments for post-traumatic stress disorder.

33.    The ZYPREXA manufactured and/or supplied by Defendants, was defective due to inadequate warning or instruction because the Defendants knew or should have known that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

34.    The ZYPREXA manufactured and/or supplied by Defendants was defective due to inadequate warning and/or inadequate testing.

35.    The ZYPREXA manufactured and/or supplied by Defendants, was defective due to inadequate post-marketing warning or instruction because after the Defendant knew or should have known of the risk of injury from ZYPREXA, they failed to provide adequate warnings to users and/or consumers of the product and continued to promote the product.

36.    As a proximate and legal result of the defective unreasonably dangerous condition of these products manufactured and/or supplied by Defendants, and each of them,

Plaintiffs suffered the herein described injuries and damages.

## COUNT III

37.    Plaintiff reiterates and restates all allegations contained in paragraphs 1 through 36 above, as if fully set forth herein.

38.    At all times herein mentioned, Defendants, and each of them, had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

39.    At all times herein mentioned, Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

40.    The Defendants, and each of them, negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted and supplied the aforesaid products, in such a way that it was dangerous and unsafe for the use and purpose for which it was intended.

41.    The Defendants, and each of them, were aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendants knew or should have known that ZYPREXA caused serious injuries, it failed to disclose the known or knowable risks associated with the product as set forth above. Defendants willfully and deliberately failed to

avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of Plaintiff CONNIE AULT.

42.    As a result of the carelessness and negligence of Defendants, the aforesaid product caused Plaintiffs to thereby sustain injuries and damages as herein alleged.

## COUNT IV

43.    Plaintiffs reiterate and restates all allegations contained in paragraphs 1 through 42 above, as if fully set forth herein.

44.    At all times mentioned herein and prior to the time it was prescribed to Plaintiff CONNIE AULT, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product and Defendants impliedly warranted to Plaintiff, and to her agents, that the product was of merchantable quality and safe for the use for which it was intended.

45.    Plaintiff CONNIE AULT and her agents relied on the skill and judgment of the Defendants and each of them, in using the aforesaid product.

46.    The product was unsafe for its intended use, and it was not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and caused severe injury to the Plaintiff. The aforesaid product was unaccompanied by warnings of its dangerous propensities either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause the Plaintiffs to sustain injuries and damages as herein alleged.

47.    After Plaintiff was made aware that her injuries were a result of the

aforesaid product, notice was duly given to Defendants of the breach of said warranty.

## COUNT V

48.    Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 47 above, as if fully set forth herein.

49.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiff CONNIE AULT and other members of the general public.

50.    At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

51.    Plaintiff CONNIE AULT, and her physicians reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiff CONNIE AULT and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiffs to sustain injuries and damages as herein alleged.

52.    As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendants were notified of the breach of said warranty.

## COUNT VI

53.    Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 52 above, as if fully set forth herein.

54.    The Defendants falsely and fraudulently represented to Plaintiff CONNIE AULT, her physicians and members of the general public, that the aforesaid product was safe for use to aid in the treatment of bipolar disorder and schizophrenia, as well as the treatment of post-traumatic stress disorder. The representations by said Defendants were, in fact, false. The true facts include, but are not limited to the fact that the aforesaid products were not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff CONNIE AULT.

55.    The Defendants falsely and fraudulently represented to Plaintiff, CONNIE AULT, her physician and members of the general public that adequate testing has been performed on the product Zyprexa and that this testing did not reveal frequent, severe, protracted, debilitating, difficult, life threatening, and disabling side effects and adverse effects of the products including but not limited to the development of diabetes, that the products did not cause injuries including but not limited to diabetes, and that there were no other known risks of injuries in using the products. The representations by said Defendants were, in fact, false. The true facts were that the products were not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to the development of diabetes, that the products caused injuries including but not limited to diabetes, and Defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendants misrepresented the safety of the products, represented that the products marketed were safe for use in bipolar

disorder and schizophrenia treatment, as well as treating post-traumatic stress disorder, and concealed warnings of the known or knowable risks of injury in using the products.

56.    When said Defendants made these representations, they knew or should have known that they were false. Defendants made said representations with the intent to defraud and deceive Plaintiff CONNIE AULT, and with the intent to induce her to act in the manner herein alleged.

57.    At the time Defendants made the aforesaid representations, and at the time Plaintiff CONNIE AULT took the actions herein alleged, Plaintiff CONNIE AULT and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff CONNIE AULT was induced to, and did, use the aforesaid product as herein described. If Plaintiff CONNIE AULT had known the actual facts, she would not have taken such action. The reliance of Plaintiff CONNIE AULT and her physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

58.    As a result of Defendants' fraud and deceit, Plaintiffs were caused to sustain the herein described injuries and damages.

59.    In doing the acts herein alleged, the Defendants acted with oppression, wantonly, recklessly, outrageously, fraud, and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

## COUNT VII

Page No. 13

60.    Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 59 above, as if fully set forth herein.

61.    The Defendants had an absolute duty to disclose the true facts regarding the safety of ZYPREXA as the only entities capable of knowing and reporting the true facts regarding the safety and testing of ZYPREXA.  Furthermore, Defendants had a duty to ensure they had a reasonable basis for making the representations as set forth above.

62.    The Defendants made the aforesaid representations with no reasonable ground for believing them to be true.  They did not have accurate or sufficient information concerning these representations.  Furthermore, Defendants were aware that without such information they could not accurately make the aforesaid representations.

63.    The aforesaid representations were made to the physician prescribing ZYPREXA prior to the date it was prescribed to Plaintiff CONNIE AULT and the physician relied on those representations about the safety of ZYPREXA when prescribing ZYPREXA to Plaintiff CONNIE AULT.

64.    At the time the aforesaid representations were made, Defendants concealed from Plaintiff CONNIE AULT and her physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

65.    The aforesaid representations were made by Defendants with the intent to induce Plaintiff CONNIE AULT to act in the manner herein alleged, that is, to ingest ZYPREXA as prescribed.

66.    The Defendants falsely represented to Plaintiff CONNIE AULT, her

physicians and members of the general public, that the aforesaid product was safe for use to aid in treatment of bipolar disorder and schizophrenia, as well as post-traumatic stress disorder. The representations by said Defendants were, in fact, false. The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff CONNIE AULT and thereby caused her injuries and damages.

67.     The Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information it could not accurately make the aforesaid representation.

68.     At the time Defendants made the aforesaid representations, and at the time ZYPREXA was prescribed to Plaintiff CONNIE AULT, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff CONNIE AULT ingested ZYPREXA as herein described. If Plaintiff CONNIE AULT had known the actual facts, she would not have taken such action. The reliance of Plaintiff CONNIE AULT and her physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

69.     As a result of Defendants' false representations and concealment, Plaintiffs were caused to sustain the herein described injuries and damages.

## COUNT VIII

70.     Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 69 above, as if fully set forth herein.

Page No. 15

71.    At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff CONNIE AULT, and to her physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and its likely had to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated.  Defendants made the affirmative representations as set forth above to Plaintiff CONNIE AULT, her physicians and the general public prior to the date ZYPREXA was prescribed to Plaintiff CONNIE AULT, while concealing material facts.

72.    At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff CONNIE AULT and to her physicians the true facts concerning the aforesaid product; that is, that use would cause injuries, including but not limited to diabetes.

73.    At all times herein mentioned, Defendants intentionally, willfully, wantonly, recklessly, outrageously, and maliciously concealed or suppressed the facts set forth above from Plaintiff CONNIE AULT's physicians and therefore from Plaintiff, with the intent to defraud as herein alleged.

74.    At all times herein mentioned, neither Plaintiff CONNIE AULT nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product to aid in treatment of post-traumatic stress disorder.

75.    As a result of the concealment or suppression of the facts set forth above, Plaintiffs sustained injuries and damages as hereinafter set forth.

76.    In doing the action herein alleged, Defendants acted wantonly, recklessly,

outrageously, with oppression and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

77.    That at all times herein mentioned, Defendants intentionally, wantonly, recklessly, outrageously, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff CONNIE AULT's physicians and therefore from Plaintiff, with the intent to defraud Plaintiff as herein alleged.

78.    At all times herein mentioned, neither Plaintiff CONNIE AULT nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, that ZYPREXA would not have been prescribed to Plaintiff CONNIE AULT and she would not have ingested it.

79.    As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries and damages as hereinafter set forth.

80.    In doing the action herein alleged, Defendants acted wantonly, recklessly, outrageously, with oppression, and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

## COUNT IX

81.    Plaintiff JOHN AULT hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 81, inclusive, of the

Complaint herein.

82.    At all times herein mentioned, Plaintiff JOHN AULT was, and is, the lawful spouse of Plaintiff CONNIE AULT..

83.    As a result of the aforesaid conduct of Defendants, and each of them, Plaintiff JOHN AULT has suffered injury by virtue of loss of his wife's love, companionship, comfort, affection, society, solace, moral support, enjoyment of sexual relation, and physical assistance in the operation and maintenance of their home.

**WHEREFORE**, Plaintiffs demand as follows:

1.    Judgement against the Defendant, Eli Lilly and Company, in favor of Connie Ault and John Ault, in an amount in excess of $4,000.00, said amount to be that which is determined to be fair and reasonable by all the evidence for all the following elements of damage:

A.    Past medical and physical pain, suffering, mental anguish, severe emotional distress, and inconvenience;

B.    Future mental pain, suffering, mental anguish, severe emotional distress, and inconvenience;

C.    Future medical expenses, pas medical expenses and out of pocket costs to the extent that these elements of damage are not paid or payable by their own insurance carrier;

D.    Loss of quality of life, enjoyment of life and impairment to their ability to earn money in the future;

E.    Punitive Damages

F.    Trial by jury;

G.    Miscellaneous expenses incurred by Plaintiff;

H.    Pre-judgement and post-judgement interest;

I.    Plaintiff's costs expended herein; and

J.    Any and all other relief to which Plaintiff may appear entitled.

This the ___14th___ day of March, 2003.

Respectfully submitted,
THE MORGAN LAW FIRM, PLLC

JUSTIN R. MORGAN
DAVID H. ABNEY, II
201 West Vine Street
Lexington, KY 40507
Telephone: (859) 255-1866
Facsimile:(859)255-4530

OF COUNSEL

NANCY HERSH, ESQ.,
MARK E. BURTON, JR., ESQ.,
RACHEL ABRAMS, ESQ.,
HERSH & HERSH
A Professional Corporation
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, CA 94102-6388
(415) 441-5544

Page No. 19

C

COMMONWEALTH OF KENTUCKY
PULASKI CIRCUIT COURT
CIVIL ACTION NO. 03-CI-_____

CARL COOPER and
LINDA COOPER                                                    PLAINTIFFS

v.

ELI LILLY AND COMPANY,
        Serve:
                National Registered Agents, Inc.
                400 West Market Street
                Suite 1800
                Louisville, Kentucky 40202

DOES, ONE thru FIFTEEN, and

Gregory Sherry, M.D.                                            DEFENDANTS
        Serve:
                Dr. Gregory Sherry
                Cumberland Medical Center
                350 Hospital Way
                Somerset, Kentucky 42503

---

## COMPLAINT

---

      Come the Plaintiffs, Carl Cooper and Linda Cooper, by and through counsel, and

for their claims and causes of action against the Defendants herein states as follows:

      1.    Plaintiffs Carl Cooper and Linda Cooper are and were at all times relevant

hereto residents of West Somerset, Pulaski County, Kentucky.

      2.    Defendant ELI LILLY AND COMPANY and DOES ONE through

Page No. 1

FIFTEEN, inclusive, and each of them, is and was a corporation doing business in the Commonwealth of Kentucky with a primary place of business of Lilly Corporate Center, Indianapolis, Indiana, 46161 and whose Agent for purposes of Service of Process is National Registered Agents, Inc., 400 West Market Street, Suite 1800, Louisville, Kentucky 40202. Plaintiffs do not know the true names of the Defendants sued herein as DOES ONE through FIFTEEN, inclusive. Plaintiffs allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused the injuries and damages sustained by Plaintiffs, as herein alleged.

3.    Defendant, Gregory Sherry, M.D., is and was at all times relevant hereto a physician licensed by the Commonwealth of Kentucky and practicing medicine in Somerset, Pulaski County, Kentucky with a primary place of business of 350 Hospital Way, Somerset, Kentucky 42503 whose agent for purposes of service of process is Dr. Gregory Sherry, 350 Hospital Way, Somerset, Kentucky 42503.

3.    At all times relevant hereto, each of the Defendants were the agent and employee of every other Defendant in doing the acts herein alleged, and were, at all times, acting within the purpose and scope of said agency and employment and all of said acts and conduct were ratified and approved by said Defendants. Plaintiffs believe that one or more of Defendants Doe One through Fifteen and Dr. Gregory Sherry may be or may have been agents of Defendant Eli Lilly who were employed to disseminate information pertaining to Zyprexa and encourage the writing of prescriptions for Zyprexa by physicians.

Page No. 2

4.  At all times relevant hereto, Defendant ELI LILLY designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as ZYPREXA (also known as OLANZAPINE).

5.  Plaintiff CARL COOPER's physicians prescribed ZYPREXA for treatment of Plaintiff's schizophrenia.  Plaintiff CARL COOPER ingested these products and sustained serious injuries, including diabetes, pancreatitis and ketoacidosis.

6.  As a direct, proximate and legal result of Defendants negligent, wantoned reckless and outrageous conduct, Plaintiff CARL COOPER suffered injuries all to Plaintiff's general damage in a sum in excess of the jurisdictional limit of this Court.

7.  As a direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff CARL COOPER was required to, and did, employ physicians and surgeons to examine, treat, and care for him, and therefore Plaintiff incurred medical and incidental expenses. As a further direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiffs CARL COOPER and LINDA COOPER were prevented from attending to their usual occupations, and thereby sustained loss of earnings.

8.  .  .  ZYPREXA is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of schizophrenia and bipolar mania.

9.  At all times relevant hereto, the DEFENDANTS themselves, through their

Page No. 3

agents, or by use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn and otherwise distributed ZYPREXA.

10.    ZYPREXA has been widely advertised by the DEFENDANTS as effective treatment for bipolar disorder and schizophrenia, with fewer adverse side effects than other treatments. The DEFENDANTS further induced physicians to prescribe ZYPREXA for treatment of conditions for which the FDA had not approved ZYREXA.

11.    The DEFENDANTS, beginning in 1996, aggressively marketed and sold ZYPREXA by falsely misleading potential users about the product and by failing to protect users from serious dangers which the Defendants knew or should have known to result from use of ZYPREXA.

12.    The DEFENDANTS widely and successfully marketed ZYPREXA in the United States, and in the State of Kentucky.   The DEFENDANTS undertook advertising campaigns promoting ZYPREXA in order to induce widespread use of the product.

13.    The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently created the image and impression that the use of ZYPREXA, was safe for human use, had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder and schizophrenia.

14.    The DEFENDANTS, and each of them, purposefully minimized and understated health hazards and risks associated with ZYPREXA. The DEFENDANTS, through promotional literature, deceived potential users of ZYPREXA and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to

Page No. 4

suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. The DEFENDANTS, falsely and fraudulently withheld relevant information from potential users of ZYPREXA.

15.  Plaintiffs are informed, believe, and allege that total profits from the sale of ZYPREXA exceed one hundred million dollars.

16.  Beginning in 1998, the medical literature, specifically an indicative report published on October 15, 1998, in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." conclusively linked ZYPREXA to causing diabetes. Other numerous reports and studies, prevalent throughout the medical literature from 1998 through the present, detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis, as well as many other undisclosed risks. On July 1, 2002, Duke University Medical Center issued a Press Release about the recent finding that linked ZYPREXA to early onset diabetes. The researchers identified 289 cases of diabetes in patients who had been prescribed ZYPREXA. These findings were published on July 2, 2002 in the medical journal Pharmacotherapy, Vol. 22, No. 7, pages 841-52. The known danger that the DEFENDANTS said product ZYPREXA was causing hyperglycemia and diabetes was never indicated by said DEFENDANTS to Plaintiff CARL COOPER's physician who prescribed the product to Plaintiff. Plaintiff CARL COOPER was ignorant of said defect of said product prior to ingesting ZYPREXA.

17.  The physician who prescribed ZYPREXA to Plaintiff CARL COOPER

Page No. 5

relied on the representations made to him by the DEFENDANTS, and each of them, prior to the date of prescribing ZYPREXA for use.  The physician relied on the representations regarding the safety of ZYPREXA, and would not have recommended for use or prescribed ZYPREXA if he had known the true facts regarding the safety of ZYPREXA.

18.    Prior to the date upon which the aforesaid product was prescribed to Plaintiff CARL COOPER, the DEFENDANTS knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose.  The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, diabetes, ketoacidosis or pancreatitis and other injuries. The DEFENDANTS, and each of them failed to take appropriate action to cure the nature of these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

19.    The DEFENDANTS thereby acted with malice towards Plaintiffs, who accordingly request that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future.  The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendant.

20.    As a result of the herein described conduct and/or product of Defendants,

Page No. 6

and each of them, Plaintiff LINDA COOPER sustained injuries and damages as a result of the loss of the love, affection, care, society, attention, services, and support of Plaintiff CARL COOPER, in an amount in excess of the jurisdictional limit this Court.

## COUNT ONE

Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 20 above, as if fully set forth herein.

21.    At all times relevant hereto mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by DEFENDANTS and ingested by Plaintiff CARL COOPER. The aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of ZYPREXA, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects.

22.    The product was also defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to the Plaintiff when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended by Defendants, and each of them.

23.    The Defendants, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein.

24.    The aforesaid product was unaccompanied by warnings of its dangerous

Page No. 7

propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder and/or schizophrenia, involved substantial dangers not readily recognizable by the ordinary user of the product. The Defendants, and each of them failed to warn of the known or knowable likelihood of injury including but not limited to the likelihood the user would develop diabetes.

25.    The ZYPREXA designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors by Defendants, was further defective due to inadequate post-marketing warning or instruction because, after Defendants, knew or should have known of the risks of injury from ZYPREXA, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to causing diabetes.

26.    Plaintiffs did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the herein described injuries and damages as herein alleged.

27.    The Defendants, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

28.    Plaintiffs neither knew, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defect.

Page No. 8

## COUNT II

Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 28 above, as if fully set forth herein.

29.    The ZYPREXA manufactured and/or supplied by Defendants, was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

30.    Alternatively, the ZYPREXA manufactured and/or supplied by Defendants, was defective in design or formulation in that when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of treatment for bipolar disorder and schizophrenia.

31.    The ZYPREXA manufactured and/or supplied by Defendants, was defective due to inadequate warning or instruction because the Defendants knew or should have known that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

32.    The ZYPREXA manufactured and/or supplied by Defendants was defective due to inadequate warning and/or inadequate testing.

33.    The ZYPREXA manufactured and/or supplied by Defendants, was defective due to inadequate post-marketing warning or instruction because after the Defendant knew or should have known of the risk of injury from ZYPREXA, they failed to provide

Page No. 9

adequate warnings to users and/or consumers of the product and continued to promote the product.

34. As a proximate and legal result of the defective unreasonably dangerous condition of these products manufactured and/or supplied by Defendants, and each of them, Plaintiffs suffered the herein described injuries and damages.

## COUNT III

Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 34 above, as if fully set forth herein.

35. At all times herein mentioned, Defendants, and each of them, had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

36. At all times herein mentioned, Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

37. The Defendants, and each of them, negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted and

Page No. 10

supplied the aforesaid products, in such a way that it was dangerous and unsafe for the use and purpose for which it was intended.

38.    The Defendants, and each of them, were aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendants knew or should have known that ZYPREXA caused serious injuries, it failed to disclose the known or knowable risks associated with the product as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of Plaintiff CARL COOPER.

39.    As a result of the carelessness and negligence of Defendants, the aforesaid product caused Plaintiffs to thereby sustain injuries and damages as herein alleged.

## COUNT IV

Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 39 above, as if fully set forth herein.

40.    At all times mentioned herein and prior to the time it was prescribed to Plaintiff CARL COOPER, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product and Defendants impliedly warranted to Plaintiff, and to his agents, that the product was of merchantable quality and safe for the use for which it was intended.

41.    Plaintiff CARL COOPER and his agents relied on the skill and judgment of the Defendants and each of them, in using the aforesaid product.

42.    The product was unsafe for its intended use, and it was not of

Page No. 11

merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and caused severe injury to the Plaintiff. The aforesaid product was unaccompanied by warnings of its dangerous propensities either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause the Plaintiffs to sustain injuries and damages as herein alleged.

43.     After Plaintiff was made aware that his injuries were a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

## COUNT V

Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 43 above, as if fully set forth herein.

44.     The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiff CARL COOPER and other members of the general public.

45.     At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

46.     Plaintiff CARL COOPER, and his physicians reasonably relied upon the

Page No. 12

skill and judgment of Defendants, and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiff CARL COOPER and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiffs to sustain injuries and damages as herein alleged.

47.    As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendants were notified of the breach of said warranty.

## COUNT VI

Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 47 above, as if fully set forth herein.

48.    The Defendants falsely and fraudulently represented to Plaintiff CARL COOPER, his physicians and members of the general public, that the aforesaid product was safe for use to aid in the treatment of bipolar disorder and schizophrenia. The representations by said Defendants were, in fact, false. The true facts include, but are not limited to the fact that the aforesaid products were not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff CARL COOPER.

49.    The Defendants falsely and fraudulently represented to Plaintiff, CARL COOPER, his physician and members of the general public that adequate testing has been performed on the product Zyprexa and that this testing did not reveal frequent, severe, protracted, debilitating, difficult, life threatening, and disabling side effects and adverse effects

Page No. 13

of the products including but not limited to the development of diabetes, pancreatitis and ketoacidoisis, that the products did not cause injuries including but not limited to diabetes, pancreatitis and ketoacidoisis, and that there were no other known risks of injuries in using the products. The representations by said Defendants were, in fact, false. The true facts were that the products were not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to the development of diabetes, pancreatitis and ketoacidoisis, that the products caused injuries including but not limited to diabetes, pancreatitis and ketoacidoisis, and Defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendants misrepresented the safety of the products, represented that the products marketed were safe for use in bipolar disorder and schizophrenia treatment, and concealed warnings of the known or knowable risks of injury in using the products.

50.    When said Defendants made these representations, they knew or should have known that they were false. Defendants made said representations with the intent to defraud and deceive Plaintiff CARL COOPER, and with the intent to induce him to act in the manner herein alleged.

51.    At the time Defendants made the aforesaid representations, and at the time Plaintiff CARL COOPER took the actions herein alleged, Plaintiff CARL COOPER and his physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff CARL COOPER was induced to, and

Page No. 14

did, use the aforesaid product as herein described.  If Plaintiff CARL COOPER had known the actual facts, he would not have taken such action.  The reliance of Plaintiff CARL COOPER and his physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

      52.     As a result of Defendants' fraud and deceit, Plaintiffs were caused to sustain the herein described injuries and damages.

      53.     In doing the acts herein alleged, the Defendants acted with oppression, wantonly, recklessly, outrageously, fraud, and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

## COUNT VII

      Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 53 above, as if fully set forth herein.

      54.     The Defendants had an absolute duty to disclose the true facts regarding the safety of ZYPREXA as the only entities capable of knowing and reporting the true facts regarding the safety and testing of ZYPREXA.  Furthermore, Defendants had a duty to ensure they had a reasonable basis for making the representations as set forth above.

      55.     The Defendants made the aforesaid representations with no reasonable

Page No. 15

ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information they could not accurately make the aforesaid representations.

56.     The aforesaid representations were made to the physician prescribing ZYPREXA prior to the date it was prescribed to Plaintiff CARL COOPER and the physician relied on those representations about the safety of ZYPREXA when prescribing ZYPREXA to Plaintiff CARL COOPER.

57.     At the time the aforesaid representations were made, Defendants concealed from Plaintiff CARL COOPER and his physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

58.     The aforesaid representations were made by Defendants with the intent to induce Plaintiff CARL COOPER to act in the manner herein alleged, that is, to ingest ZYPREXA as prescribed.

59.     The Defendants falsely represented to Plaintiff CARL COOPER, his physicians and members of the general public, that the aforesaid product was safe for use to aid in treatment of bipolar disorder and schizophrenia. The representations by said Defendants were, in fact, false. The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff CARL COOPER and thereby caused his injuries and damages.

60.     The Defendants made the aforesaid representations with no reasonable

Page No. 16

ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information it could not accurately make the aforesaid representation.

61. At the time Defendants made the aforesaid representations, and at the time ZYPREXA was prescribed to Plaintiff CARL COOPER, Plaintiff and his physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff CARL COOPER ingested ZYPREXA as herein described. If Plaintiff CARL COOPER had known the actual facts, she would not have taken such action. The reliance of Plaintiff CARL COOPER and his physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

62. As a result of Defendants' false representations and concealment, Plaintiffs were caused to sustain the herein described injuries and damages.

## COUNT VIII

Plaintiffs reiterate and restate all allegations contained in paragraphs 1 through 62 above, as if fully set forth herein.

63. At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff CARL COOPER, and to his physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and its likely had to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendants made the affirmative

Page No. 17

representations as set forth above to Plaintiff CARL COOPER, his physicians and the general public prior to the date ZYPREXA was prescribed to Plaintiff CARL COOPER, while concealing material facts.

64.    At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff CARL COOPER and to his physicians the true facts concerning the aforesaid product; that is, that use would cause injuries, including but not limited to diabetes.

65.    At all times herein mentioned, Defendants intentionally, willfully, wantonly, recklessly, outrageously, and maliciously concealed or suppressed the facts set forth above from Plaintiff CARL COOPER's physicians and therefore from Plaintiff, with the intent to defraud as herein alleged.

66.    At all times herein mentioned, neither Plaintiff CARL COOPER nor his physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product to aid in treatment of schizophrenia.

67.    As a result of the concealment or suppression of the facts set forth above, Plaintiffs sustained injuries and damages as hereinafter set forth.

68.    In doing the action herein alleged, Defendants acted wantonly, recklessly, outrageously, with oppression and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

69.     That at all times herein mentioned, Defendants intentionally, wantonly, recklessly, outrageously, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff CARL COOPER's physicians and therefore from Plaintiff, with the intent to defraud Plaintiff as herein alleged.

70.     At all times herein mentioned, neither Plaintiff CARL COOPER nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, that ZYPREXA would not have been prescribed to Plaintiff CARL COOPER and he would not have ingested it.

71.     As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries and damages as hereinafter set forth.

72.     In doing the action herein alleged, Defendants acted wantonly, recklessly, outrageously, with oppression, and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

## COUNT IX

73.     Plaintiff LINDA COOPER hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 72, inclusive, of the Complaint herein.

74.     At all times herein mentioned, Plaintiff LINDA COOPER was, and is, the lawful spouse of Plaintiff CARL COOPER.

Page No. 19

75. As a result of the aforesaid conduct of Defendants, and each of them, Plaintiff LINDA COOPER has suffered injury by virtue of loss of her husband's love, companionship, comfort, affection, society, solace, moral support, enjoyment of sexual relation, and physical assistance in the operation and maintenance of their home.

**WHEREFORE**, Plaintiffs demand as follows:

1. Judgement against the Defendant, Eli Lilly and Company, in favor of Carl Cooper and Linda Cooper, in an amount in excess of $4,000.00, said amount to be that which is determined to be fair and reasonable by all the evidence for all the following elements of damage:

A. Past medical and physical pain, suffering, mental anguish, severe emotional distress, and inconvenience;

B. Future mental pain, suffering, mental anguish, severe emotional distress, and inconvenience;

C. Future medical expenses, pas medical expenses and out of pocket costs to the extent that these elements of damage are not paid or payable by their own insurance carrier;

D. Loss of quality of life, enjoyment of life and impairment to their ability to earn money in the future;

E. Punitive Damages;

F. Trial by jury;

Page No. 20

G.   Miscellaneous expenses incurred by Plaintiff;

H.   Pre-judgement and post-judgement interest;

I.   Plaintiff's costs expended herein; and

J.   Any and all other relief to which Plaintiff may appear entitled.

This the ____27____ day of June, 2003.

Respectfully submitted,
THE MORGAN LAW FIRM, PLLC

JUSTIN R. MORGAN
DAVID H. ABNEY, II
201 West Vine Street
Lexington, KY 40507
Telephone: (859) 255-1866
Facsimile:(859)255-4530

OF COUNSEL

NANCY HERSH, ESQ.,
MARK E. BURTON, JR., ESQ.,
RACHEL ABRAMS, ESQ., HERSH & HERSH
A Professional Corporation
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, CA  94102-6388
(415) 441-5544

Page No. 21

```
********** -COMM. JO  RL- ****************** DATE JUN-30-2003   *** TIME 09:04 *** P.01
```

```
        MODE = MEMORY TRANSMISSION          START=JUN-30 08:57    END=JUN-30 09:04

        FILE NO.= 215

    STN NO.   COM   ABBR NO.    STATION NAME/TEL.NO.   PAGES   DURATION

      001     OK    <01>       ELI LILLY-LEGAL        023/023  00:07'29"

                                                 -NINA M. GUSSACK PEPPER   -

    ***************************** -PEPPER HAMILTON - ***** -     215 981 4307- **********
```

# Pepper Hamilton LLP
#### Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750
www.pepperlaw.com

## FAX INFORMATION SHEET

Date:        April 4, 2003
ID Number:   31437
Identifier:  44877.90

| **Recipient's Name** | **Company** | **General Number** | **Fax Number** |
|---|---|---|---|
| Susanne Hanchar | Eli Lilly and Company | 317-433-4493 | 317-276-6221 |

Sender:                    Nina M. Gussack
Sender's Direct Line:      215-981-4950
Sender's Email Address:    gussackn@pepperlaw.com

Total Pages Including Cover:   23

Comments:

An original or a copy has [ ] or has not [✓] been sent to you by mail [ ] or by overnight service [ ] or by email [ ].

✦ ✦ If total pages are not received, or an error occurred during this transmission,
please call the sender at the direct line listed above. ✦ ✦

✦ ✦ CONFIDENTIALITY NOTE ✦ ✦

The documents accompanying this facsimile transmission contain information from the law firm of Pepper Hamilton LLP which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this faxed information is strictly prohibited, and that the documents should be returned to this Firm immediately. In this regard, if you have received this facsimile in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you.

| Operator's Use Only | | | | | |
|---|---|---|---|---|---|
| Start Time: | : | am [ ] pm [ ] | End Time: | : | am [ ] pm [ ] |
| Operator: | | | | | |

D

CHARLENE H. FOLSE, individually and :   NUMBER *2003-4733* DIVISION ____
on behalf of her minor child, JOSHUA
JAMES LEE FOLSE

VERSUS :   15th JUDICIAL DISTRICT COURT

ELI LILLY AND COMPANY, FOREST :   PARISH OF LAFAYETTE
LABORATORIES, INC. and FOREST
PHARMACEUTICALS, INC. :   STATE OF LOUISIANA

## PETITION FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes petitioner, Charlene Folse, individually and on behalf of her minor child, Joshua James Lee Folse, a person of the full age of majority and resident of the Parish of Lafayette, State of Louisiana, who respectfully represents that:

1.

Made defendants herein are:

a. **Eli Lilly and Company** (herein referred to as "Lilly"), a foreign, business corporation who was authorized to do business in this state at the time of the incident sued on, whose principal place of business is located in Indianapolis, Indiana, but whose principal place of business in Louisiana is located at 3900 Causeway Boulevard, Suite 855, Metairie, LA 70002, and which can be served with process through its registered agent, National Registered Agents, Inc., 225 St. Ann Drive, Mandeville, LA 70471-3219;

b. **Forest Laboratories, Inc.** (hereinafter referred to as "Forest Labs"), a foreign, business corporation who was not authorized to do business in this state at the time of the incident sued on, whose principal place of business is located at 909 Third Avenue, New York, NY 10022, and which can be served with process through the Louisiana Long-Arm Statute; and

c. **Forest Pharmaceuticals, Inc.** (hereinafter referred to as "Forest"), a foreign, business corporation who was not authorized to do business in this state at the time of the incident sued on, whose principal place of business is located at 13600 Shoreline Drive, St. Louis, MO 63045, and which can be served with process through the Louisiana Long-Arm Statute.

2.

The above-named defendants, individually and through their officers and employees, are liable unto petitioners for damages sustained by Kevin A. Folse, deceased, and by petitioners as described hereinafter, together with legal interest from date of judicial demand until paid and for all costs of these proceedings, for the following reasons:

3.

Kevin A. Folse died on September 8, 2002 at his home in Lafayette, Louisiana from respiratory failure after taking the prescription medications, Celexa and Zyprexa, in combination for a period of approximately 15 days.

4.

Charlene H. Folse is the surviving spouse of Kevin A. Folse, and in that capacity brings both survival action and wrongful death claims.

5.

Joshua James Lee Folse is the sole surviving child of Kevin A. Folse and is still a minor. Through his mother, Charlene H. Folse, in her capacity as natural tutrix, he also brings both survival action and wrongful death claims.

6.

On January 24, 2002, Kevin Folse presented to Dr. Edgardo R. Concepcion, who is believed to be a clinical psychiatrist, on the advice and recommendation of a social worker.

7.

Beginning on January 24, 2002, Dr. Concepcion prescribed Adderall XR 10 mg and Zyprexa 7.5 mg to Kevin Folse and provided the patient with a prescription for a one month supply. Kevin Folse filled the prescriptions and took these medications as directed by Dr. Concepcion.

8.

On February 7, 2002, Dr. Concepcion increased the prescription of Adderall XR to 20 mg, maintained the Zyprexa prescription at 7.5 mg and added a third medication, Ativan 0.5 mg, to be taken on an as needed basis for anxiety. Again, Kevin Folse filled the prescriptions and took these medications as directed by Dr. Concepcion.

9.

On March 7, 2002, Dr., Concepcion continued the Adderall XR and Zyprexa with no changes to the dosages.

10.

In the following months, Kevin Folse continued to take the Adderall XR and Zyprexa as directed and prescribed by Dr. Concepcion.

11.

On August 20, 2002, Dr. Concepcion added Celexa 20 mg to the medications Kevin Folse was already taking.

12.

Upon information and belief, Dr. Concepcion provided Kevin Folse with a twenty-eight day supply of samples of Celexa, as well as a written prescription for Celexa 20 mg to be filled when the samples were exhausted.

13.

Kevin Folse took the three medications prescribed by Dr. Concepcion as directed.

14.

On September 8, 2002, Charlene H. Folse discovered her husband in bed in the family home unresponsive and not breathing. Shortly thereafter, the death of Kevin A. Folse was declared and it was determined that his death resulted from respiratory failure and arrest, which was caused by abnormally high levels of Olanzapine (Zyprexa) in his system.

15.

Plaintiffs show that Kevin A. Folse did not die as a result of suicide or homicide.

16.

Lilly designed, tested, labeled, manufactured, packaged, supplied, sold, advertised and marketed Zyprexa (Olanzapine).

17.

Forest is a subsidiary of Forest Labs, and upon information and belief, Forest Labs designed, tested, labeled, manufactured, packaged, and supplied Celexa (citalopram hydrobromide) and Forest supplied, sold, advertised and marketed Celexa.

18.

Celexa is an inhibitor of the Cyp1A2 and Cyp2D6 isoforms of the cytochrome P450 system in the liver.

19.

The Cyp1A2 and Cyp2D6 isoforms are the enzymes responsible for the oxidation of Olanzapine.

20.

When a person who is taking Olanzapine (Zyprexa) begins to take Celexa, the body's ability to metabolize and clear Olanzapine in the liver is inhibited, which results in a build-up of Olanzapine in the body with toxic side-effects.

21.

The product labeling and the product information disseminated by Lilly for the drug Zyprexa does not sufficiently identify, nor warn of, this interaction with Celexa.

22.

The product labeling and the product information disseminated by Forest Labs and/or Forest for the drug Celexa does not sufficiently identify, nor warn of, this interaction with Zyprexa.

23.

At the time they left the control of Lilly, the Zyprexa Kevin Folse received was defectively designed, manufactured, marketed, supplied and distributed because, among other defects, the drug was unreasonably dangerous when given in combination with Celexa and other drugs that are inhibitors of the Cyp1A2 and Cyp2D6 isoforms of the cytochrome P450 system in the liver.

24.

At the time they left the control of Forest and Forest Labs, the Celexa Kevin Folse received was defectively designed, manufactured, marketed, supplied and distributed because, among other defects, the drug was unreasonably dangerous when given in combination with Zyprexa and other drugs that are oxidized by the Cyp1A2 and Cyp2D6 isoforms.

25.

Alternatively, if Zyprexa is found not to be unreasonably dangerous or defective, then the defendant, Lilly, was negligent in the following respects:

a. Failing to use due care so as to avoid the aforementioned adverse event in individuals who are prescribed Zyprexa to be taken with Celexa;

b. Failing to give adequate warnings regarding all possible side effects, adverse reactions and drug interactions when Zyprexa is prescribed with Celexa;

c. Failing to conduct adequate pre-clinical and clinical testing, and post-marketing surveillance to determine the safety of Zyprexa when it is prescribed with other drugs, including Celexa;

d. Failing to disclose and warn of drug interaction information obtained in the pre-clinical and clinical testing;

e. Failing to provide adequate education and training to health care providers to whom Zyprexa was marketed and sold; and

f. All other negligent acts and omissions proven at trial.

26.

Alternatively, if Celexa is found not to be unreasonably dangerous or defective, then the defendants, Forest and Forest Labs, were negligent in the following respects:

a. Failing to use due care so as to avoid the aforementioned adverse event in individuals who are prescribed Celexa to be taken with Zyprexa;

b. Failing to give adequate warnings regarding all possible side effects, adverse reactions and drug interactions when Celexa is prescribed with Zyprexa;

c. Failing to conduct adequate pre-clinical and clinical testing, and post-marketing surveillance to determine the safety of Celexa when it is prescribed with other drugs, including Zyprexa;

d. Failing to disclose and warn of drug interaction information obtained in the pre-clinical and clinical testing;

e. Failing to provide adequate education and training to health care providers to whom Celexa was marketed and sold; and

f. All other negligent acts and omissions proven at trial.

27.

Due to the above actions, inactions and/or omissions, as well as the strict liability, of the defendants, its officers and its employees, Kevin A. Folse suffered the following damages including but not limited to:

a)    Pre-death physical pain and suffering;

b)    Pre-death emotional and psychological pain and suffering;

c)    Death and/or loss chance of survival;

d)    Loss of enjoyment of life; and

e)    All other elements of general or special damages that may be proven at trial.

28.

Due to the above actions, inactions and/or omissions, as well as the strict liability, of the defendants, its officers and its employees, plaintiffs, Charlene H. Folse and Joshua James Lee Folse, suffered the following damages including but not limited to:

a.    Loss of love and affection and companionship of their husband/father;

b.    Loss of consortium, service and society;

c.    Loss of past and future support and other employment related benefits;

d.    Emotional and psychological damages (past, present and future);

e.    Funeral expenses; and

f.    All other general and special damages that may be proven at trial.

29.

Plaintiff, Charlene H. Folse, also alleges that she has suffered serious mental anguish and emotional distress resulting from the discovery of her deceased husband in their bed in the

family home shortly after his death from the drug-induced respiratory failure, and as such, seeks an award of damages pursuant to La. C.C. art. 2315.6.

30.

Plaintiffs aver that it will be necessary to call expert witnesses to testify at the trial of this cause, and that fees for said expert witnesses, whether for written reports, oral testimony given by deposition, or for court appearances, should be taxed as court costs herein and assessed against the defendants.

31.

Plaintiffs request a trial by jury as to all issues allowed by law.

32.

Plaintiffs show that a request for medical review panel, naming Dr. Edguardo Concepcion as a defendant, has been filed pursuant to the provisions of the Louisiana Medical Malpractice Act, and that after said medical review panel renders an opinion, plaintiffs intend to add Dr. Concepcion as a defendant in this proceeding.

33.

For purposes of determining whether diversity of citizenship exists, in the event the defendants named herein attempt to remove this proceeding to federal court, plaintiffs show that Dr. Edguardo Concepcion is a resident and domiciliary of the Parish of Lafayette, State of Louisiana.

**WHEREFORE,** plaintiffs Charlene H. Folse and Joshua James Lee Folse, pray that the defendants herein be served with this petition and cited to appear and answer same within the delays provided by law, and that after all legal delays and due proceedings are had, there be judgment rendered herein in favor of plaintiffs and against the defendants, Eil Lilly and Company, Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc., for money damages reasonable in the premises, together with legal interest from the date of judicial demand, until paid; for all costs of these proceedings; for trial by jury; and for all general and equitable relief within the discretion of this Court.

By Attorneys:

**McGLYNN, GLISSON & KOCH**
**A PROFESSIONAL LAW CORPORATION**

By: _____

**Benjamin P. Mouton** #20305
**John G. Allelo** #18093
340 Florida Street (70801)
P.O. Box 1909
Baton Rouge, LA 70821
Telephone: (225) 344-3555
Facsimile: (225) 344-3666

FILED THIS 5 DAY OF Sept. 2003
TRUE COPY ATTEST, LAFAYETTE, LA
Melinda Dark
By Clerk of Court

**PLEASE SERVE:**

**Eli Lilly and Company,**
through its registered agent,
National Registered Agents, Inc.
225 St. Ann Drive
Mandeville, LA 70471


**PLEASE ISSUE LONG-ARM CITATIONS FOR:**

**Forest Laboratories, Inc.**
through its President
at its principal place of business
909 Third Avenue
New York, NY 10022

**Forest Pharmaceuticals, Inc.**
through its President
at its principal place of business
13600 Shoreline Drive
St. Louis, MO 63045

E

RECYCLED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Civil Division

CASE NUMBER  1:02CV02383

JUDGE: Reggie B. Walton

DECK TYPE: Personal Injury/Malpractice

DATE STAMP: 12/06/2002

BARRY MCCLAMROCK
82 Cumberland Court SW
Concord, North Carolina 2802~

       Plaintiff,

vs.                )

ELI LILLY AND COMPANY   )
Lilly Corporate Center    )
Indianapolis, Indiana 46285 )
                )
                )
                )
       Defendants.     )

**COMPLAINT FOR DAMAGES, JURY DEMAND**

**[PRODUCTS LIABILITY]**

1.

Jurisdiction of this Court is founded upon 28 U.S.C. §1332.

2.

Plaintiff, BARRY MCCLAMROCK is a citizen of the United States and the State of North Carolina, currently residing in North Carolina. Plaintiff BARRY MCCLAMROCK has received his medical treatment in North Carolina.

3.

Defendants, ELI LILLY AND COMPANY, are residents of and have their principal place of business in the state of Indiana.

/ / /

/ / /

- 1 -

7.

As a further direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff BARRY MCCLAMROCK was prevented from attending to his usual occupation, and thereby sustained a loss of earnings and a diminished earning capacity.

8.

ZYPREXA is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of schizophrenia and bipolar mania.

9.

At all times relevant, the DEFENDANTS themselves, or by use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn and otherwise distributed ZYPREXA.

10.

ZYPREXA has been widely advertised by the DEFENDANTS as effective treatment for bipolar disorder, with fewer adverse side effects than other treatments.

11.

The DEFENDANTS, beginning in 1996, aggressively marketed and sold ZYPREXA by falsely misleading potential users about the products and by failing to protect users from serious dangers which the Defendants knew or should have known to result from use of ZYPREXA.

12.

The DEFENDANTS widely and successfully marketed ZYPREXA in the United States, and in the District of Columbia. The DEFENDANTS undertook advertising campaigns promoting the

- 3 -

virtues of ZYPREXA in order to induce widespread use of the product.

13.

The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently sought to create the image and impression that the use of ZYPREXA, was safe for human use, had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder.

14.

The DEFENDANTS, and each of them, purposefully minimized and understated health hazards and risks associated with ZYPREXA. The DEFENDANTS, through promotional literature, deceived potential users of ZYPREXA and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. The DEFENDANTS, falsely and fraudulently withheld relevant information from potential users of ZYPREXA.

15.

Plaintiff is informed and believe and thereon allege that total profits from the sale of ZYPREXA exceeds hundreds of millions of dollars.

16.

At least as early as 1998, the medical literature conclusively revealed data which linked ZYPREXA with causing diabetes mellitus. An indicative report was published on October 15, 1998 in the Society of Biological Psychiatry,

- 4 -

Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." There are other numerous reports and studies throughout the medical literature from 1998 through the present which detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis. The known danger that the DEFENDANTS' said product ZYPREXA was causing hyperglycemia and diabetes was never indicated by said DEFENDANTS to the Plaintiff's physician who prescribed the product to Plaintiff. Plaintiff was ignorant of said defect of said product prior to ingesting ZYPREXA.

17.

The physician who prescribed ZYPREXA to Plaintiff BARRY MCCLAMROCK relied on the representations made to him by the DEFENDANTS, and each of them, prior to the date of prescribing ZYPREXA for use. The physician relied on the representations regarding the safety of ZYPREXA, and would not have recommended for use or prescribed ZYPREXA if he had known the true facts regarding the safety of ZYPREXA.

18.

Prior to the date upon which the aforesaid product was prescribed for Plaintiff, the DEFENDANTS knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose. The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, diabetes mellitus or ketoacidosis and other injuries. The DEFENDANTS, and each of them failed to take appropriate action to cure the nature of

- 5 -

HERSH AND HERSH
A Professional Corporation

these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

19.

The DEFENDANTS thereby acted with malice towards Plaintiff, who accordingly request that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendant.

### FIRST CAUSE OF ACTION
### [Strict Liability in Tort;
### Failure To Warn]

20.

Plaintiff hereby incorporates by reference as if fully set forth herein each and every allegation in paragraphs 1-19, inclusive, of this Complaint.

21.

At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by Defendants and ingested by Plaintiff BARRY MCCLAMROCK. The aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of ZYPREXA, and given the severity of the adverse effects, the warnings given did not accurately

- 6 -

HERSHANDHERSH
A Professional Corporation

reflect the symptoms and severity of the adverse effects.    The

product was also defective in that the product manufactured and

distributed differed from the manufacturer's intended results.

These defects caused serious injuries to the user when used in

its intended and foreseeable manner, i.e., when it was ingested

as prescribed, and in the manner recommended by DEFENDANTS, and

each of them.

22.

The  DEFENDANTS,  and  each  of  them  knew  that  the

aforesaid product was to be used by the user without inspection

for defects therein.

23.

The aforesaid product was unaccompanied by warnings

of  its  dangerous  propensities  that  were  known  or  reasonably

scientifically  knowable  at  the  time  of  distribution.    The

reasonably  foreseeable  use  of  the  product,  i.e.,  ingestion  to

aid  in  treating  bipolar  disorder,  involved  substantial  dangers

not  readily  recognizable  by  the  ordinary  user  of  the  product.

The  DEFENDANTS,  and  each  of  them  failed  to  warn  of  the  known

or  knowable  likelihood  of  injury  including  but  not  limited  to

the  likelihood  the  user  would  develop  diabetes  mellitus.

24.

The  ZYPREXA  designed,  manufactured,  tested,  analyzed,

distributed,  recommended,  merchandised,  advertised,  promoted,

supplied  and  sold  to  distributors  by  DEFENDANTS,  and  each  of

them,  was  further  defective  due  to  inadequate  post-marketing

warning  or  instruction  because,  after  DEFENDANTS,  and  each  of

them,  knew  or  should  have  known  of  the  risks  of  injury  from

- 7 -

ZYPREXA, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to diabetes mellitus.

25.

Plaintiff did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the hereindescribed injuries and damages to Plaintiff.

26.

The DEFENDANTS, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

27.

Plaintiff BARRY MCCLAMROCK neither knew, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defect.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION
**[Strict Products Liability Pursuant to Restatement Second of Torts §402A (1965)]**

28.

Plaintiff hereby incorporates by reference as if fully set forth herein, each and every allegation contained in

- 8 -

1   paragraphs 1 through 27 inclusive, of this Complaint.

2                                29.

3       The ZYPREXA manufactured and/or supplied by

4   DEFENDANTS, and each of them herein was placed into the stream

5   of commerce by these DEFENDANTS in a defective and

6   unreasonably dangerous condition in that the foreseeable risks

7   exceeded the benefits associated with the design or

8   formulation.

9                                30.

10      Alternatively, the ZYPREXA manufactured and/or

11  supplied by Defendants, and each of them, was defective in

12  design or formulation in that when it was placed in the stream

13  of commerce, it was unreasonably dangerous, it was more

14  dangerous than an ordinary consumer would expect and more

15  dangerous than other forms of treatment for bipolar disorder.

16                               31.

17      The ZYPREXA manufactured and/or supplied by

18  DEFENDANTS, and each of them, was defective due to inadequate

19  warning or instruction because the Defendants and each of them

20  knew or should have known that the product created a risk of

21  harm to consumers and these DEFENDANTS failed to adequately

22  warn of said risks.

23                               32.

24      The ZYPREXA manufactured and/or supplied by

25  DEFENDANTS and each of them, was defective due to inadequate

26  warning and/or inadequate testing.

27  / / /

28  / / /

                             - 9 -

HERSH AND HERSH
A Professional Corporation

33.

The ZYPREXA manufactured and/or supplied by DEFENDANTS, and each of them, was defective due to inadequate post-marketing warning or instruction because after the Defendant knew or should have known of the risk of injury from ZYPREXA, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

34.

As a proximate and legal result of the defective unreasonably dangerous condition of these products manufactured and/or supplied by DEFENDANTS, and each of them, Plaintiff was caused to suffer the hereindescribed injuries and damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### THIRD CAUSE OF ACTION

### [Negligence]

35.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 34, inclusive, of this Complaint.

36.

At all times herein mentioned, DEFENDANTS, and each of them, had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

/ / /

/ / /

- 10 -

37.

At all times herein mentioned, DEFENDANTS, and each of them, knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

38.

DEFENDANTS, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, overpromoted and supplied the aforesaid products, that it was dangerous and unsafe for the use and purpose for which it was intended.

39.

DEFENDANTS, and each of them, were aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendants knew or should have known that ZYPREXA caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above. DEFENDANTS willfully and deliberately failed to avoid those consequences, and in doing so, DEFENDANTS acted with a conscious disregard of the safety of Plaintiff BARRY MCCLAMROCK.

40.

As a result of the carelessness and negligence of

- 11 -

Defendants, the aforesaid product caused Plaintiff BARRY MCCLAMROCK to thereby sustain the damages and injuries as herein alleged.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### [Breach of Implied Warranty]

41.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 40, inclusive, of this Complaint.

42.

At all times mentioned herein, DEFENDANTS manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was prescribed to Plaintiff BARRY MCCLAMROCK, DEFENDANTS impliedly warranted to Plaintiff, and to his agents, that the product was of merchantable quality and safe for the use for which it was intended.

43.

Plaintiff BARRY MCCLAMROCK and his agents relied on the skill and judgment of the DEFENDANTS and each of them, in using the aforesaid product.

44.

The product was unsafe for its intended use, and it was not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its

- 12 -

HERSHANDHERSH
A Professional Corporation

intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause the Plaintiff to sustain damages and injuries as herein alleged.

45.

After Plaintiff was made aware of his injuries as a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

WHEREFORE, Plaintiff prays or judgment against Defendant as hereinafter set forth.

### FIFTH CAUSE OF ACTION

### [Breach of Express Warranty]

46.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 45, inclusive, of this Complaint.

47.

The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiff BARRY MCCLAMROCK and other members of the general public.

48.

At the time of the making of the express warranties, DEFENDANTS had knowledge of the purpose for which the aforesaid

- 13 -

HERSH AND HERSH
A Professional Corporation

product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

49.

Plaintiff, and his physicians reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiff and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiff to sustain damages and injuries as herein alleged.

50.

As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said DEFENDANTS were notified of the breach of said warranty.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**[Fraud]**

51.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 50, inclusive, of this Complaint.

/ / /

- 14 -

52.

DEFENDANTS falsely and fraudulently represented to Plaintiff, his physicians and members of the general public, that the aforesaid product was safe for use to aid in treating bipolar disorder. The representations by said DEFENDANTS were in fact, false. The true facts include, but are not limited to the fact that the aforesaid products were not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff.

53.

The representations by said DEFENDANTS were, in fact, false. The true facts were that the products were not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to the development of diabetes mellitus, that the products caused injuries including but not limited to diabetes mellitus, and death and DEFENDANTS did not disclose or warn users and their physicians about the known risk of injury in using the products. DEFENDANTS misrepresented the safety of the products, represented that the products marketed were safe for use in bipolar disorder treatment, and concealed warnings of the known or knowable risks of injury in using the products.

54.

When said Defendants made these representations, they knew that they were false. Defendants made said representations with the intent to defraud and deceive

- 15 -

Plaintiff, and with the intent to induce him to act in the manner herein alleged, i.e., to use the aforementioned product to aid in treatment of bipolar disorder.

55.

At the time DEFENDANTS made the aforesaid representations, and at the time Plaintiff took the actions herein alleged, Plaintiff and his physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff was induced to, and did, use the aforesaid product as herein described. If Plaintiff had known the actual facts, he would not have taken such action. The reliance of Plaintiff and his physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

56.

As a result of DEFENDANTS' fraud and deceit, Plaintiff was caused to sustain the herein described injuries and damages.

57.

In doing the acts herein alleged, the DEFENDANTS acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages to deter DEFENDANTS and others from engaging in similar conduct in the future. Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendant.

- 16 -

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### [Negligent Misrepresentation]

58.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 57, inclusive, of this Complaint.

59.

DEFENDANTS had an absolute duty to disclose the true facts regarding the safety of ZYPREXA as the only entities capable of knowing and reporting the true facts regarding the safety and testing of ZYPREXA. Furthermore, DEFENDANTS had a duty to ensure it had a reasonable basis for making the representations as set forth above.

60.

DEFENDANTS made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, DEFENDANTS were aware that without such information they could not accurately make the aforesaid representations.

61.

The aforesaid representations were made to the physician prescribing ZYPREXA prior to the date it was prescribed to Plaintiff and the physician relied on those representations about the safety of ZYPREXA when prescribing ZYPREXA to Plaintiff.

- 17 -

HERSH AND HERSH
A Professional Corporation

62.

At the time the aforesaid representations were made, DEFENDANTS concealed from Plaintiff and his physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

63.

The aforesaid representations were made by DEFENDANTS with the intent to induce Plaintiff to act in the manner herein alleged, that is, to ingest ZYPREXA as prescribed.

64.

DEFENDANTS falsely represented to Plaintiff, his physicians and members of the general public, that the aforesaid product was safe for use to aid in treatment of bipolar disorder. The representations by said DEFENDANTS were in fact, false. The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff and thereby caused his injuries.

65.

DEFENDANTS made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, DEFENDANTS were aware that without such information it could not accurately make the aforesaid representation.

/ / /

/ / /

- 18 -

66.

At the time DEFENDANTS made the aforesaid representations, and at the time ZYPREXA was prescribed to Plaintiff, Plaintiff and his physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff ingested ZYPREXA as herein described. If Plaintiff had known the actual facts, he would not have taken such action. The reliance of Plaintiff and his physicians upon DEFENDANTS' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

67.

As a result of DEFENDANTS' false representations and concealment, Plaintiff was caused to sustain the herein described injuries and damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### EIGHTH CAUSE OF ACTION

### [Fraud By Concealment]

68.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 67, inclusive, of this Complaint.

69.

At all times mentioned herein, DEFENDANTS had the duty and obligation to disclose to Plaintiff, and to his physicians, the true facts concerning the aforesaid product;

- 19 -

1    that is, that said product was dangerous, and defective, and

2    how likely it was to cause serious consequences to users,

3    including injuries as herein occurred, and how unnecessary it

4    was to use said product for the purposes indicated. DEFENDANTS

5    above to Plaintiff, his physicians and the general public prior

6    to the date ZYPREXA was prescribed to Plaintiff, while

7    concealing the following material facts.

70.

9    At all times mentioned herein, DEFENDANTS had the

10   duty and obligation to disclose to Plaintiff and to his

11   physicians the true facts concerning the aforesaid product;

12   that is, that use would cause injuries including but not

13   limited to diabetes mellitus.

71.

15   At all times herein mentioned, DEFENDANTS

16   intentionally, willfully, and maliciously concealed or

17   suppressed the facts set forth above from Plaintiff's

18   physicians and therefore from Plaintiff, with the intent to

19   defraud as herein alleged.

72.

21   At all times herein mentioned, neither Plaintiff nor

22   his physicians were aware of the facts set forth above, and had

23   they been aware of said facts, they would not have acted as

24   they did, that is, would not have utilized the product to aid

25   in treatment of bipolar disorder.

73.

27   As a result of the concealment or suppression of the

28   facts set forth above, Plaintiff sustained injuries and damages

- 20 -

as hereinafter set forth.

74.

In doing the action herein alleged, DEFENDANTS acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to DEFENDANTS' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

75.

That at all times herein mentioned, DEFENDANTS intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff's physicians and therefore from Plaintiff, with the intent to defraud Plaintiff as herein alleged.

76.

At all times herein mentioned, neither Plaintiff nor his physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, that ZYPREXA would not have been prescribed to BARRY MCCLAMROCK and he would not have ingested it.

77.

As a result of the concealment or suppression of the facts set forth above, Plaintiff suffered injuries and damages as hereinafter set forth.

78.

In doing the action herein alleged, DEFENDANTS acted with oppression, fraud, and malice and Plaintiff is therefore

- 21 -

entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to DEFENDANTS' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, as follows:

1.    For general damages in the amount of $10,000,000.00;

2.    For past and future medical, hospital, incidental and service expenses according to proof;

3.    For pre-judgment and post-judgment interest provided by law;

4.    For economic losses according to proof;

5.    For costs of suit herein;

6.    For punitive or exemplary damages against all DEFENDANTS in the amount of $25,000,000.00; and

7.    For such other relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    Respectfully submitted,

2                                HERSH & HERSH
                                 A Professional Corporation
3

4                                By
                                 NANCY HERSH
5                                601 Van Ness Avenue, Suite 2080
                                 San Francisco, California 94102
6                                (415) 441-5544

7

8                                AARON  M.  LEVINE  &  ASSOCIATES,
                                 P.A.
9

10

11                               By
                                 AARON LEVINE
12                               1320 19th Street, N.W.
                                 Suite 500
13                               Washington, D.C. 20036
                                 (202) 833-8040
14                               Counsel for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

1

2                          **DEMAND FOR JURY TRIAL**

3                  Plaintiff herewith requests a trial by jury as to all

4      issues of material fact.

5

6      DATED:  December 4, 2002.

7                                          HERSH & HERSH

8                                          A Professional Corporation

9

10                                         By
                                           NANCY HERSH

11                                         601 Van Ness Avenue, Suite 2080
                                           San Francisco, California 94102

12                                         (415) 441-5544

13                                         AARON  M.  LEVINE  &  ASSOCIATES,

14                                         P.A.

15

16                                         By
                                           AARON LEVINE

17                                         1320 19th Street, N.W.
                                           Suite 500

18                                         Washington, D.C. 20036
                                           (202) 833-8040

19                                         Counsel for Plaintiff

20

21

22

23

24

25

26

27

28

                                   - 24 -

F

# United States District Court

J.T. BURNS
SEP 0 2 2003

_____ EASTERN _____ DISTRICT OF _____ TENNESSEE _____

In re: Estate of Sonya Denise Phillips
by Carolyn Phillips, mother, next friend
and custodian of decedent Sonya Phillips'
minor children: Shumai'kee Phillips,
Tashanti Phillips, and Tahiji Phillips

## SUMMONS IN A CIVIL ACTION

V.

CASE NUMBER: 3:00-cv-692

Roane County, et al.

TO: (Name and Address of Defendant)

**ELI LILLY AND COMPANY**
**Lilly Corporate Center**
**Indianapolis, IN 46285**
**c/o National Registered Agents, Inc.,**
**1900 Church Street, Suite 400**
**Nashville, TN 37201**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Dan Channing Stanley, Esq.
Lee, Lee & Lee
An Association of Attorneys
422 South Gay Street, 3rd Floor
Knoxville, TN 37902
(865) 544-0101

an answer to the complaint which is herewith served upon you, within _____ **20** _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

**PATRICIA L. McNUTT, CLERK**                          8/4/03

CLERK                                                 DATE

BY DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION, AT KNOXVILLE

| | | |
|---|---|---|
| In re: Estate of Sonya Denise Phillips<br>by Carolyn Phillips, mother, next friend and<br>custodian of decedent Sonya Phillips'<br>minor children: Shumai'kee Phillips,<br>Tashanti Phillips, and Tahiji Phillips | ) ) ) ) ) ) | RECEIVED<br><br>JUL 03 2003 |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 3:00-CV-692 |
| ROANE COUNTY<br>   c/o Roane County Executive,<br>   Ken Yager<br>   200 East Race Street<br>   Kingston, TN 37763 | ) ) ) ) ) ) | JURY DEMAND<br>VARLAN |
| KEN YAGER, Roane County Executive<br>   in his official and individual capacities<br>   300 East Race Street<br>   Kingston, Tennessee 37763 | ) ) ) ) ) | |
| DAVID HAGGARD, Sheriff of Roane County,<br>   in his individual and official capacities | ) ) ) | |
| FAY HALL, head jailer in Roane County,<br>   in her official and individual capacities | ) ) ) | |
| LINDA MAYES, jailer in Roane County<br>   in her official and individual capacities | ) ) ) | |
| JOHN MAYES, jailer in Roane County<br>   in his official and individual capacities | ) ) ) | |
| KELLY JACKSON, jailer in Roane County<br>   in her official and individual capacities | ) ) ) | |
| CATHY GOSS, jailer in Roane County<br>   in her official and individual capacities | ) ) | |

phillips sonya 4th AMC

1

THOMAS PIO, jailer in Roane County ）
    in his official and individual capacities ）
    ）

SANDRA MILLER, jailer in Roane County ）
    in her official and individual capacities ）
    ）

STACEE FRENCH, jailer in Roane County ）
    in her official and individual capacities ）
    ）

LYNDA CARTER, jailer in Roane County ）
    in her official and individual capacities ）
    ）

STEPHEN HALCOMB, jailer in Roane County ）
    in his official and individual capacities ）
    ）

DEBORAH R. GIBSON, jailer in Roane County ）
    in her official and individual capacities ）
    ）

CORRECTIONS OFFICER RYMER, ）
    jailer in Roane County ）
    in his/her official and individual capacities ）
    ）

CORRECTIONS OFFICER RITTENHOUSE, ）
    jailer in Roane County ）
    in his/her official and individual capacities ）
    ）

CORRECTIONS OFFICER MELTON, ）
    jailer in Roane County ）
    in his/her official and individual capacities ）
    ）

CORRECTIONS OFFICER BELCHER, ）
    jailer in Roane County ）
    in his/her official and individual capacities ）
    ）

JOHN DOE, jailer in Roane County ）
    in his official and individual capacities ）
    ）

JOHN DOE, jailer in Roane County ）
    in his official and individual capacities ）
    ）

JANE DOE, jailer in Roane County ）
    in her official and individual capacities ）

phillips sonya ᵗʰ AMC

2

JANE DOE, jailer in Roane County )
    in her official and individual capacities )
)
AMBULANCE SERVICE OF ROANE )
COUNTY (ASRC) )
    3070 Roane State Highway )
    Harriman, Tennessee 37748 )
)
GLORIA WRIGHT, administrative director )
of ASRC )
    in her official and individual capacities )
)
ROBERT DUKES, M.D., medical director )
of ASRC )
    in his official and individual capacities )
)
HOWIE ROSE, employee and agent of )
ASRC )
    in his official and individual capacities )
)
PARAMEDIC D. TIPTON, employee )
and agent of ASRC )
    in his/her official and individual capacities )
)
JOHN DOE, employee and agent of ASRC )
    in his official and individual capacities )
)
JANE DOE, employee and agent of ASRC )
    in her official and individual capacities )
)
THOMAS BODUCH, M.D., Roane County )
Jail medical doctor )
    in his official and individual capacities )
    314 East Spring Street )
    Kingston, Tennessee 37763 )
)
RIDGEVIEW PSYCHIATRIC )
HOSPITAL AND CENTER , INC )
Registered Agent: Robert J. Benning )
240 West Tyrone )
Oak Ridge, Tennessee 37830 )

phillips sonya 4th AMC

3

JOHN DOES , agent ,servants, employees )
or contractors of Ridgeview Psychiatric )
Hospital and Center , Inc )
240 West Tyrone )
Oak Ridge, Tennessee 37830 )
                                                             )
KATHLEEN SALES, M.D. )
Louis Singleton Ridgeview Center )
221 Davonia Street )
Harriman, Tennessee )
                                                             )
ELI LILLY AND COMPANY )
Lilly Corporate Center )
Indianapolis, IN 46285 )
c/o National Registered Agents, Inc., )
1900 Church Street, Suite 400 )
Nashville, TN 37201 )
                                                             )
        Defendants )

## FOURTH AMENDED COMPLAINT

Come the plaintiffs through counsel and sue the defendants, and allege as follows:

1.  This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(3) and (4) for redress

under 42 U.S.C. §§ 1983 et seq for deprivation of rights, privileges, or immunities secured by the

constitution and laws of the United States.  The court also has supplemental jurisdiction over any

state law aspects of the questions here presented under 28 U.S.C. § 1367.

2.  Decedent Sonya Denise Phillips died on December 8, 2000, while in the custody of

defendant Roane County and incarcerated at the Roane County Jail in Kingston, Tennessee.  She

was a pre-trial detainee and had not been convicted nor sentenced.

3.  On November 24, 2000, Sonya Phillips was found unconscious in her cell after other

detainees and prisoners alerted the jailers that she was unconscious.  She had no pulse, was not

breathing, and her eyes were in a fixed stare; Ms. Phillips was temporarily deceased. After she

was revived, Ambulance Service of Roane County assessed Ms. Phillips' need for medical care.

Despite the fact that Ms. Phillips had been found not breathing with no pulse, she was not taken

to a doctor or hospital for further examination, treatment, or observation.

   3a. This incident placed defendant jail officials and employees, defendant

ambulance service and its employees and agents, defendant Boduch, and all other defendants on

notice that Sonya Phillips suffered from a severe medical condition that would likely result in her

death if not properly treated.

   4. Decedent continued to be severely ill for several days prior to her death on December

8, 2000. The decedent was placed in an all concrete cell four days prior to her death after she

began complaining of being constipated. This isolation separated Ms. Phillips from the other

detainees and prisoners who had cared for her and had alerted the jailers to her previous near-

death experience. The water was turned off in the concrete cell so that jail officials could verify

that the decedent was in fact constipated. After decedent was seen coughing up blood on

December 8, 2000, and the Roane County Ambulance Service assessed decedent's need for

medical care. Again decedent was not taken to see a doctor or a hospital. Several hours after the

denial of a medical doctor's assessment, Sonya Phillips died in the Roane County Jail.

   5. Carolyn Phillips is the mother, next friend and custodian of decedent Sonya Phillips'

minor children: Shumai'kee Phillips, Tashanti Phillips, and Tahiji Phillips.

   6. The conduct, practices, policies and/or procedures as applied to decedent amount to

deliberate indifference to a serious medical need and caused Sonya Phillips' death.

   7. All defendants are sued in both their official and individual capacities. Their conduct

phillips sonya 4th AMC

was of such wanton and willful character that punitive damages are warranted.

8.  During all times pertinent to the events that led to this Complaint, all defendants who are and/or were employees of Roane County, including, but not limited to, all officials, supervisors, and/or employees of the Roane County Sheriff's Department and/or Jail, all officials, supervisors, and/or employees of the Ambulance Service of Roane County, David Haggard, Fay Hall, Ken Yager, and Thomas Boduch, M.D., were acting under the color of law.

## CLAIMS FOR RELIEF

### SUBSTANTIVE AND PROCEDURAL DUE PROCESS CLAIM

9.  Plaintiffs' Fourteenth Amendment substantive and procedural rights were violated by defendant jail officials' and employees' deliberate indifference to Sonya Phillips' medical needs. The actions of defendants denied Sonya Phillips "appropriate treatment" and caused her death.

10.  Decedent was deprived of her protected interest in life, liberty, and property, without due process, when she was denied medical treatment without sufficient legal cause.  As such, decedent's procedural due process rights were violated.

11.  Decedent's substantive due process rights were violated when the defendants violated clear and explicit constitutional guarantees pursuant to the Fourteenth Amendment of the United States Constitution, as well as engaged in behavior by a state actor that would "shock the conscience" by denying decedent medical treatment based upon the knowledge of the events stated above.

12.  Each individual occurrence in which Sonya Phillips was denied "appropriate treatment" was a separate violation of Ms. Phillips' Fourteenth Amendment rights, resulting in

phillips sonya 4th AMC

6

multiple clams for the violations of those rights.

13.  Furthermore, it is alleged that the official policies and customs of Roane County were unconstitutional, or in the alternative, the policies and customs of Roane County were unconstitutionally implemented, in that they arbitrarily denied medical treatment to inmates, or were designed ineffectively to provide medical treatment, and therefore violated Ms. Phillips Fourteenth Amendment rights.  Even if such policies were not formally approved by appropriate officials or channels, the above-stated events were such a widespread practice as to have the force of law.

14.  THEREFORE, plaintiffs seek all relief available under 42 U.S.C. § 1983 et seq. including, but not limited to, other damages for wrongful death recoverable under T.C.A. § 20-5-113.

## INJUNCTIVE AND DECLARATORY RELIEF

15.  Plaintiffs ask for declaratory relief against defendants that practices applied to decedent were unconstitutional and ask that the court enjoin these officials from further such conduct, or in the alternative, plaintiffs' request that such Roane County officials and/or executives take appropriate action to correct such unconstitutional policies or customs by creating and implementing appropriate and constitutional policies regarding the medical treatment of inmates, prisoners, detainees, etc. in custody or incarcerated in Roane County facilities.

phillips sonya 4th AMC

7

## CRUEL AND UNUSUAL PUNISHMENT

16. Defendant jail officials' and employees' denial of necessary medical care for Sonya Phillips amounted to the infliction of "cruel and unusual punishment" in violation of Eighth Amendment of the Federal Constitution.

17. Furthermore, such isolation in the last days of Ms. Phillips life could constitute solitary confinement as defined by the laws of Tennessee. If found that such conduct subjected Ms. Phillips to solitary confinement without proper authority or justification, such confinement amounted to cruel and unusual punishment in violation of the Eight Amendment of the Constitution.

18. Furthermore, as a direct and proximate cause of such Eighth Amendment violations, Ms. Phillips suffered physical and emotional damages and prays for all relief allowed under the law.

## NEGLIGENCE

19. Plaintiffs aver that defendants were negligent in monitoring Ms. Phillips serious medical condition, and as a direct and proximate cause of such negligence Ms. Phillips suffered damages, including, but not limited to, physical/emotional pain and suffering, loss of enjoyment of life and subsequently death

## WRONGFUL DEATH

20. Plaintiffs aver that the defendants were the direct and proximate cause of decedent's death. Decedent was 29 years of age when she died, had a capacity to earn money in any art, trade or profession, had good personal habits for industry, had good personal habits for sobriety,

and had established earning capacity. Plaintiff Carolyn Phillips has incurred medical and funeral expenses; as next of kin, she brings this action for the mental and physical suffering of Sonya Phillips, necessary expenses, and other damages for wrongful death recoverable under T.C.A. 20-5-113. In addition, plaintiff avers that she, along with Shumai'kee Phillips, Tashanti Phillips, and Tahiji Phillips, as the children and heirs of Sonya Phillips, suffered loss of the consortium or society of the deceased, which included not only the tangible benefits but also those intangible benefits received from a mother and daughter, such as attention, guidance, care, protection, training, companionship, affection, solace and love.

## NEGLIGENT SUPERVISION AND TRAINING

21. Plaintiffs further sue defendants Roane County Jail and Ambulance Service of Roane County, including all officials, administrators, and/or supervisors of both entities, under state law for negligence and negligent supervision and training, and allege that such negligence was a direct and proximate cause of plaintiffs' injuries.

22. Plaintiffs allege that the court has supplemental jurisdiction to hear these state law claims pursuant to 28 U.S.C. § 1367.

## MEDICAL MALPRACTICE

23. Defendant paramedics and emergency medical technicians, acting within the scope of their employment as employees and agents of the Ambulance Service of Roane County, were negligent in their assessment and treatment of Sonya Phillips. Their negligence in failing to transport Sonya Phillips to a proper medical facility for treatment by a medical doctor directly and proximately caused Sonya Phillips' death, which would have been avoided if she had received proper care. Defendant paramedics' and emergency medical technicians' conduct fell

far below the recognized standard of professional practice for such persons in Kingston, Tennessee, and similar communities.

24. Defendant Thomas Boduch, M.D., as medical doctor for the Roane County Jail, was negligent in his failure to properly assess, treat, and care for Sonya Phillips. His negligence directly and proximately caused Sonya Phillips' death, which would have been avoided had she received proper care. Defendant Boduch's conduct fell far below the recognized standard of professional practice for medical doctors in Kingston, Tennessee, and similar communities.

25. Defendants Ridgeview Hospital and its agents, servants, employees or contractors, including but not limited to defendant Kathleen Sales, M.D., were negligent in their diagnosis and treatment of Sonya Phillips , now deceased , and as a direct and proximate cause of such negligence Ms. Phillips died on December 8, 2000.

26. More specifically, Defendants Ridgeview Hospital and its agents, servants, employees or contractors, including but not limited to defendant Kathleen Sales, M.D., prescribed dosages of Zyprexa to Ms. Phillips in excess of the recommended amounts which exposed her to substantial and unjustifiable risks, and/or, failed to properly monitor known risks associated with such medication.

27. Furthermore, defendants failed to warn and/or inform Ms. Phillips of possible risks associated with **Zyprexa** which constituted a lack of informed consent.

28. Furthermore, defendants provided Ms. Phillips with unqualified medical personnel which constituted negligent hiring or negligent entrustment.

29. As such, defendant Ridgeview Hospital, and its agents, servants, employees, and contractors, acted with less than or failed to act with ordinary and reasonable care in accordance

phillips sonya 4th AMC                                                                                          10

with the recognized standard of acceptable professional practice for physicians or health care

providers in their respective specialties, in failing to diagnosis and treat Ms. Phillips pursuant to

Tenn. Code 20-29-119, and caused injuries to Ms. Phillips which would not have otherwise

occurred.

30.  For the reasons stated above in ¶¶27-31, defendant Kathleen Sales, M.D. acted with

less than or failed to act with ordinary and reasonable care in accordance with the recognized

standard of acceptable professional practice for physicians or health care providers in her

speciality of psychiatry, causing injuries to Sonya Phillips which would not have otherwise

occurred.

## PRODUCT LIABILITY

31.  Eli Lilly and Company is a foreign corporation with principal offices in Indianapolis,

Indiana.  It is registered to do business in the state of Tennessee and may be served with process

through its corporate agent, National Registered Agents, Inc. in Nashville, Tennessee.

32.  Defendant Eli Lilly and Company manufactures Zyprexa (Olanzapine), a

psychotropic drug prescribed in the treatment of schizophrenia and bipolar mania.

33.  Known adverse events associated with taking Zyprexa can be the onset of diabetes

mellitus and diabetic acidosis.

34.  Zyprexa was prescribed for Sonya Phillips by defendant Dr. Sales.

35.  At the time of her death, Sonya Phillips was suffering from diabetes mellitus and had

developed diabetes ketoacidosis, which was the medical cause of her death.

36.  Defendants Roane County et al. have amended their Answer to plead the comparative

fault of Eli Lilly and Company for failing to make defendant Dr. Sales aware, through literature

or studies, that Zyprexa can cause diabetes ketoacidosis.

31. Plaintiffs therefore allege that defendant Eli Lilly and Company bears a portion of the fault for the death of Sonya Phillips for failing to adequately warn of the potential of Zyprexa to cause diabetes mellitus and/or diabetes ketoacidosis.

32. Plaintiffs allege that Eli Lilly and Company is liable to plaintiffs for violation of TCA §§29-29-101 et seq.; for violation of Restatement of Torts 2nd §402(A); and for failing to properly and adequately warn the plaintiffs, doctors and the personnel involved in the care and treatment of Sonya Phillips of the dangers inherent in the use of the Zyprexa.

## PUNITIVE DAMAGES

33. Plaintiffs allege that the conduct of all defendants was of such a wanton and reckless nature as to warrant punitive damages, under both State and Federal law.

34. Furthermore, due to the defendants' reckless, intentional, malicious, and/or criminal behavior, the Plaintiff seeks punitive damages in the amount that a jury finds.

WHEREFORE, the Plaintiffs sue the Defendants for compensatory damages, including but not limited to wrongful death claims, in the amount of eight million dollars ($8,000,000.00) and punitive damages for wanton, willful, intentional, malicious, and/or criminal behavior in the amount of five million dollars ($5,000,000.00) and demands a jury to try the case. The Plaintiffs also demand prejudgment and post-judgment interest, and attorney fees and costs as allowed by law. The Plaintiffs sue the Defendants for any general damages not specified within the Complaint.

phillips sonya 4th AMC                                                              12

Respectfully submitted, this _____ day of _____ July 2003.

_____
Dan C. Stanley, TN Bar # 021002

LEE, LEE & LEE
Lee Building
422 South Gay Street; Suite 301
Knoxville, TN 37902
Phone: (865) 544-0101
Fax: (865) 544-0536

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of this pleading has been served upon counsel for all parties at interest in this case by delivering a true and exact copy of said pleading to the offices of said counsel, or by placing a true and exact copy of said pleading in the United States Mail, addressed to said counsel at his office, with sufficient postage thereon to carry the same to its destination.

This _____ day of _____ July, 2003.

LEE, LEE & LEE

By _____

phillips sonya 4th AMC                                                    13

G

RECYCLED

RECEIVED DEC 1 5 2003

**WORKING COPY**

1   LAW OFFICES OF DALE K. GALIPO
2   Dale K. Galipo, State Bar No. 144074
    21800 Burbank Boulevard, Suite 310
    Woodland Hills, California 91367
3   (818) 347-3333 - Telephone
    (818) 347-4118 - Facsimile
4

5   Attorney for Plaintiffs

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   JANETTA THOMPSON; JANETTA        ) CASE NO.: CV03-7641 PA (PJWx)
     THOMPSON as Guardian Ad Litem for )
12   RYAN A. RILEY; SAMMY THOMPSON;   ) FIRST AMENDED COMPLAINT FOR
     CONNIE TAYLOR,                   ) DAMAGES:
13                                     )
             Plaintiff,                )
14                                     )
                                       ) VIOLATION OF PLAINTIFFS'
15       v.                            ) CONSTITUTIONAL RIGHTS
                                       ) PURSUANT TO 42 U.S.C. 1983,
16   COUNTY OF LOS ANGELES; ANGEL     ) CALIFORNIA'S CONSTITUTION, AND
     RENDON, M.D.; SHERRY BROWN;      ) PENDENT STATE CLAIMS
17   IMRIAZ BASRAI, M.D.; ELI LILLY AND )
     COMPANY and DOES 1 through 10,   ) DEMAND FOR JURY TRIAL
18   Inclusive,                        )
                                       )
19           Defendants.               )
     _____ )
20

21

22   **PLAINTIFFS,** JANETTA THOMPSON; JANETTA THOMPSON as Guardian Ad Litem for

23   RYAN A. RILEY; SAMMY THOMPSON; CONNIE TAYLOR, allege as follows:

24                       **PARTIES AND JURISDICITON**

25       1.      The plaintiff RYAN RILEY through his Guardian Ad Litem JANETTA

26   THOMPSON is a citizen of the United States and resident of the County of Los Angeles

27   and State of California.

28       2.      The plaintiff JANETTA THOMPSON is the legal guardian of plaintiff RYAN

                                       1

1  RILEY and is a citizen of the United States and resident of the County of Los Angeles

2  and State of California.

3       3.      The plaintiff SAMMY THOMPSON, husband of a JANETTA THOMPSON

4  the legal guardian of plaintiff RYAN RILEY, is a citizen of the United States and residen

5  of the County of Los Angeles and State of California.

6       4.      The plaintiff CONNIE TAYLOR, biological mother of plaintiff RYAN

7  RILEY,  is a citizen of the United States and resident of the County of Los Angeles and

8  State of California.

9       5.      At all relevant times, the defendants ANGEL RENDON, M.D.,

10  SHERRY BROWN, and IMRIAZ  BASRAI, M.D. were employed by the COUNTY OF

11  LOS ANGELES and were acting within the scope of their authority as employees of the

12  County of Los Angeles.

13       6.      The defendant ELI LILLY AND COMPANY is a corporation and the

14  pharmaceutical company that produces and distributes the drug Zyprexa.

15       7.      The principal claims asserted in this action are that the defendants

16  violated the plaintiff's constitutional rights and is founded on 42 U.S.C. § 1983.  This

17  court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331, 1343.

18       8.      All remaining claims arise out of the same events and occurrences, so

19  that this court may exercise subject matter jurisdiction of these claims under 28 U.S.C.

20  § 1367.

21       9.      This court has personal jurisdiction over the defendants because the

22  defendants performed the acts complained of in this judicial district.

23       10.      Venue is proper in this judicial district because the events alleged in this

24  complaint all occurred within this judicial district.

25       11.      The plaintiffs filed a claim with the defendant COUNTY OF LOS

26  ANGELES as required under the Government Code.  Said claim was

27  denied by the COUNTY OF LOS ANGELES by operation of law.

28  //

2

**FACTUAL BASIS FOR CLAIMS**

12.    On or about July 2, 2002, the plaintiff was a resident at Maclaren Hall, a facility of the COUNTY OF LOS ANGELES.

13.    At that time, the plaintiff RYAN RILEY was in the custody and control of the COUNTY OF LOS ANGELES and was administered the drug Zyprexa without his knowledge and consent, without the knowledge and consent of the minor's parents or legal guardian, without the required permission of the Court and specifically contrary to the orders of the Childrens' Court.  It was also medical negligence to have administered Zyprexa to RYAN RILEY in his physical and mental condition.

14.    After receiving Zyprexa, RYAN RILEY immediately showed significant adverse symptoms and reactions to the medication including, but not limited to, a severe neurological reaction causing an inability for RYAN RILEY to ambulate on his own.  RYAN RILEY could ambulate before receiving Zyprexa and is now wheelchair bound.

15.    RYAN RILEY should not have been given Zyprexa because of his age, lack of informed consent and his medical history of seizure disorder and epilepsy.  As further alleged below, the administration of Zyprexa to RYAN RILEY without informed consent constituted a battery and fell below the standard of care generally acceptable in the medical community.

16.    Further, the plaintiff RYAN RILEY is alleging that the medical care provided to him fell below the standard of care generally accepted in the medical community.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983**

**CIVIL RIGHTS VIOLATIONS**

**(ALL PLAINTIFFS vs. COUNTY OF LOS ANGELES,**

**ANGEL RENDON, M.D., IMRIAZ, BASRAI, M.D., SHERRY BROWN)**

3

17.    The plaintiff incorporates paragraphs 1, through 16, above.

18.    Each and every act alleged was done by the defendants, not only as individuals, but under the color of the statutes, ordinances, regulations, customs, and usages of the State of California and the rules, policies, and direction of the County of Los Angeles because the defendants were clothed with both actual and apparent authority by the governing body, the County of Los Angeles.

19.    As a direct and legal cause of the wrongful acts of the defendants, the plaintiff suffered extreme indignities and humiliation, severe emotional distress, mental anguish, loss of liberty, loss of standing in the community, and has been held up to ridicule before his peers, and has lost statutory rights to an education free and clear of the above deprivations.

20.    The actions of the defendants impeded and hindered the course of justice with the intent to deny the plaintiff the equal protection of the law.

21.    The actions of the defendants, jointly and severally, entitle the plaintiff to an award of exemplary and punitive damages.  The violations of the plaintiffs' rights under the U.S. Constitution included against the employees of the public entity.

22.    Plaintiffs' individual civil rights, as guaranteed by the 4th, 5th, 8th, and 14th Amendments of the United States Constitution and Congress, were infringed upon by the defendants named in the caption of this cause of action.  This cause of action arises under Title 42, United States Code, Sections 1983, 1985 and 1988, wherein plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to them by the 4th, 5th, 8th and 14th Amendments to the United States Constitution and under the laws and constitution of the State of California.

23.    On or about  July 2, 2002 and for some time thereafter, defendants COUNTY OF LOS ANGELES, ANGEL RENDON, M.D., IMRIAZ, BASRAI, M.D., SHERRY BROWN and DOES 1 through 10, deprived plaintiffs of the rights and liberties secured to them by the 4th, 5th, 8th and 14th Amendments to the Untied States Constitution, in that said defendants and their supervising and managerial employees,

1   agents, and representatives, acting with gross negligence and with reckless and
2   "deliberate indifference" to the rights and liberties of the public in general, and of
3   plaintiffs and of persons in their class, situation and comparable position in particular,
4   knowingly maintained, enforced and applied an official recognized custom, policy and
5   practice of prescribing Zyprexa and other psychotropic medications to minors without
6   their knowledge and consent and without a proper order from the court.  The minor and
7   other plaintiffs were not aware he was receiving Zyprexa until after July 2, 2002.

8
9                              **SECOND CAUSE OF ACTION**
10                   **INTENTIONAL INFLICTION OF MENTAL DISTRESS**
11                  **(BY RYAN RILEY AGAINST COUNTY OF LOS ANGELES,**
12          **ANGEL RENDON, M.D., IMRIAZ BASRAI, M.D., SHERRY BROWN)**
13          24.    The plaintiff incorporates paragraphs 1, through 23, above.
14          25.    That the actions of the defendants, jointly and severally, were extreme
15   and outrageous and performed with the intention of causing severe emotional distress
16   to the plaintiff or with reckless disregard of the consequences.
17          26.    Specifically, the defendant ANGEL RENDON, M.D., SHERRY
18   BROWN, IMRIAZ A. BASRAI, M.D. caused or directed to be administered Zyprexa to
19   RYAN RILEY without the consent of RYAN RILEY, his family or the Court.  The
20   defendant knew that Zyprexa has a potent psychotropic drug with potentially severe
21   and permanent side effects.
22          27.    That as a direct and legal cause of the wrongful acts of the
23   defendants, the plaintiff suffered extreme indignities and humiliation, severe emotional
24   distress, mental anguish, loss of liberty loss of standing in the community, and has
25   been held up to ridicule before his peers, and has lost his statutory right to be free and
26   clear of the above deprivations.
27   //
28   //

1                   **THIRD CAUSE OF ACTION**

2                   **INVASION OF PRIVACY**

3        **(BY RYAN RILEY AGAINST COUNTY OF LOS ANGELES,**

4    **ANGEL RENDON, M.D., IMRIAZ BASRAI, M.D., SHERRY BROWN)**

5      28.     The plaintiff incorporates paragraphs 1, through 27, above.

6      29.     The plaintiff had a right to be free from unreasonable searches of his

7 person and of wrongful intrusion into an individual's private life, which would outrage or

8 cause mental suffering , shame, or humiliation to a person of ordinary sensibilities.

9      30.     In violation of that right to privacy, the defendants, jointly and severally,

10 administered into RYAN RILEY'S body the potent psychotropic drug Zyprexa without

11 the knowledge and consent of RYAN RILEY, his family or legal guardian.

12      31.     As a direct and legal cause of the wrongful acts of the defendants,

13 the plaintiff suffered extreme indignities and humiliation, severe emotional distress,

14 mental anguish, loss of liberty, loss of standing in the community, and has been held up

15 to ridicule before her peers , and has lost his statutory rights to be free and clear of the

16 above deprivations.

17

18                 **FOURTH CAUSE OF ACTION**

19                 **NEGLIGENCE**

20              **(MEDICAL MALPRACTICE)**

21       **(BY RYAN RILEY AGAINST ANGEL RENDON, M.D.**

22    **IMRIAZ  BASRAI, M.D., SHERRY BROWN, COUNTY OF LOS ANGELES)**

23      32.     That the plaintiff incorporates paragraphs 1, through 31, above.

24      33.     That the defendants owed a duty to the plaintiff to refrain from conducting

25 unreasonable search and seizure on the person of the plaintiff and others similarly

26 situated, and from violating her rights as a person.

27      34.     That in violation of that duty, the defendants were negligent in manner:

28           a.     By exceeding in scope the reasonableness of the search of the

1          plaintiff;

2          b.      By subjecting the plaintiff to the administration of Zyprexa without

3          informed consent.

4          c.      By failing to ascertain the medical condition of the plaintiff before

5          administering Zyprexa to him.

6     35.     The defendants fell below the standard of care generally acceptable in the

7     medical community by administering Zyprexa to RYAN RILEY, lack of informed

8     consent, misdiagnosis, improper patient monitoring, and by not immediately stopping

9     the Zyprexa once the adverse reactions presented.

10     36.     As a direct and legal cause of the wrongful acts of the defendants,

11     the plaintiff suffered extreme indignities and humiliation, severe emotional distress,

12     mental anguish, loss of liberty, loss of standing in the community, and has been held up

13     to ridicule before her peers, and has lost his statutory right to an education free and

14     clear of the above descriptions.  Plaintiffs JANETTA THOMPSON, SAMMY

15     THOMPSON, and CONNIE TAYLOR are claiming they suffered severe emotional

16     distress as a result of observing the negligent conduct of the defendants on RYAN

17     RILEY and the effects of the negligent conduct.

18

19          **FIFTH CAUSE OF ACTION**

20          **BATTERY**

21          **(RYAN RILEY AGAINST ANGEL RENDON, M.D.,**

22          **IMRIAZ   BASRAI, M.D., COUNTY OF LOS ANGELES)**

23     37.     The plaintiff incorporates paragraphs 1, through 36, above.

24     38.     At no time did RYAN RILEY consent to any of the acts of defendant

25     alleged above.

26     39.     As a legal result of the acts of the defendants as alleged in the

27     causes of action above, RYAN RILEY has a permanent and debilitating neurological

28     disorder preventing him from ambulating and moving other portions of his body in a

7

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

normal manner.

40.     As a legal result of the acts of defendant as alleged in the causes of action above, plaintiff was hurt and injured in his health, strength, and activity, sustaining injury to his nervous system and person, all of which have caused, and continue to cause, plaintiff great mental, physical, and nervous pain and suffering. Plaintiff is informed and believes and thereon alleges that these injuries will result in some permanent disability to him.  As a result of these injuries, plaintiff has suffered general damages.

41.     As a further legal result of the acts of defendant, plaintiff has incurred, and will continue to incur, medical and related expenses.  The full amount of these expenses is not known to plaintiff at this time.   RYAN RILEY will also suffer from loss of future earnings due to his permanent disability as a result of the medical care received by the defendants and the administration of the drug Zyprexa manufactured and distributed by defendant ELI LILLY AND COMPANY.

## SIXTH CAUSE OF ACTION
### PRODUCTS LIABILITY
### BY RYAN RILEY AGAINST ELI LILLY
### AND COMPANY

42.     On or about July 2, 2002, plaintiff RYAN RILEY was injured by the product Zyprexa which was defective because of its effect on minors with a history of seizure or epilepsy.

43.     Each of the defendants knew the product would be purchased and used without inspection for defects.  The product was defective when it left the control of each defendant.

44.     The product at the time of injury was being used in the manner intended by the defendants.

45.     The product at the time of injury was used in a manner that was

8

1     reasonably foreseeable by defendants as involving a substantial danger not readily

2     apparent. Adequate warnings of the danger were not given.

3          46.     Plaintiff RYAN RILEY was a user of the product.

4          47.     The defendant ELI LILLY AND COMPANY manufactured and assembled

5     the product, designed the product and supplied the product to the manufacturer, and

6     sold the product to the public.

7          48.     The defendant ELI LILLY AND COMPANY who owed a duty to plaintiff

8     and was negligent in their design, manufacture, and failure to warn of the known

9     harmful side effects of Zyprexa.

10         49.     The defendant ELI LILLY AND COMPANY who breached an implied

11     warranty with regard to the safety of the product.

12         48.     Plaintiff's injury was the legal result of the above-referenced conduct of

13     ELI LILLY AND COMPANY with respect to Zyprexa.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER**

Plaintiff requests that this court grant judgment against the defendants:

1.      For compensatory damages in an amount to be determined by the trier of fact as sufficient to compensate plaintiff for the injuries described in this complaint;

2.      For punitive or exemplary damages in an amount determined by the trier of fact to be sufficient to punish and deter each defendant against whom these damages are awarded; (No punitive damages being claimed against COUNTY OF LOS ANGELES or healthcare providers under medical negligence cause of action);

3.      For costs of suit;

4.      For reasonable attorney's fees; and

5.      For all other relief that is just and proper.


DATED: December 12, 2003                    LAW OFFICES OF DALE K. GALIPO


By: _____
DALE K. GALIPO
Attorney for Plaintiffs

1

## DEMAND FOR JURY TRIAL

2

3    **COME NOW PLAINTIFFS,** JANETTA THOMPSON; JANETTA THOMPSON as

4    Guardian Ad Litem for RYAN A. RILEY; SAMMY THOMPSON; CONNIE TAYLOR

5    hereby, and respectfully demand that the present matter be set for a jury trial.

6

7    Dated: December 12, 2003                    LAW OFFICES OF DALE K. GALIPO

8

9                                                By:

10                                               DALE K. GALIPO
                                                 Attorney for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

I am employed in the County of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action. My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

5

6

7

On December 12, 2003, I served the foregoing document described as PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

### SEE ATTACHED LIST

8

### METHOD OF SERVICE

9

10

11

12

13

__XX__   **(BY MAIL)** I caused such envelope(s) fully prepaid to be placed in the United States mail at Woodland Hills, California. I am "readily familiar" with the firm's practice of collection and processing correspondence or mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

14

15

__    **(BY PERSONAL SERVICE)** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

16

__    **(BY FACSIMILE)** I caused such document(s) to be telephonically transmitted to the offices of the addressee at

17

### JURISDICTION

18

__    (State) I declare under penalty of perjury that the above is true and correct.

19

20

__XX__   (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

21

Executed on December 12, 2003 at Woodland Hills, California.

22

23

24

Fred Hanassab

25

26

27

28

12

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

1

## MAILING LIST

2

3   Jon F. Monroy, Esq.
    Jennifer E. Gysler, Esq.
    Monroy, Averbuck & Gysler
4   32123 Lindero Canyon Road, Suite 301
    Westlake Village, California 91361

5

6   Janet H. Kwuon, Esq.
    Colleen T. Davies, Esq.
7   Reed, Smith, Crosby, Heafey
    355 South Grand Avenue, Suite 2900
8   Los Angeles, California 90071

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

H



FILED
LUCAS COUNTY

2003 ... 20 ... ... 33

COMMON PLEAS COURT

# STATE OF OHIO

## LUCAS COUNTY COURT OF COMMON PLEAS

### DIVISION NO. _____

CASE NUMBER: _____

ASSIGNED TO JUDGE BOWMAN

JUDGE: _____

**BARBARA WILSON**
2278 Torrey Hill Drive, Apt. 4
Toledo, Ohio 43606

        Plaintiff,

vs.

**ELI LILLY AND COMPANY**
1705 Lilly Corporate Center
Indianapolis, Indiana 46285

SERVE PROCESS AGENT:
National Registered Agents, Inc.
145 Baker Street
Marion, Ohio 43302

And

**UNIDENTIFIED DEFENDANTS**
"DOES" ONE through FIFTEEN,
inclusive,

        Defendants.

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Filed by: Robert E. Sanders, Ohio Bar No. 0024189 and J. Pierre Tismo, Ohio Bar No. 0067924; Attorneys for Plaintiff, Barbara Wilson

### [PRODUCTS LIABILITY]

1. Strict Liability--Failure To Warn
2. Strict Products Liability
3. Negligence
4. Breach of Implied Warranty
5. Breach of Express Warranty
6. Fraud
7. Fraud by Concealment
8. Negligent Misrepresentation

## DEMAND FOR JURY TRIAL

Plaintiff, Barbara Wilson, hereby demands trial by jury.


For her complaint herein, Plaintiff, Barbara Wilson, states:


## PRELIMINARY ALLEGATIONS

### 1.

Plaintiff BARBARA WILSON is a citizen of the United States and the State of Ohio, currently residing in Toledo, Ohio.


### 2.

Defendant ELI LILLY AND COMPANY is a resident of and has its principal place of business in the State of Indiana.

### 3.

Plaintiff does not know the true names of the Defendants sued herein as DOES ONE through FIFTEEN, inclusive.   Plaintiff alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused the injuries and damages sustained by Plaintiff, as herein alleged.

### 4.

At all times herein mentioned, each of the Defendants was the agent and employee of every other Defendant in doing the acts herein alleged, and was, at all times, acting within the purpose and scope of said agency and employment and all of said acts and conduct were ratified and approved by said Defendants.

### 5.

At all times herein mentioned, Defendant ELI LILLY AND COMPANY ("ELI LILLY") and DOES ONE through FIFTEEN, inclusive ("DEFENDANTS"), and each of them, was and is a corporation existing under the laws of incorporation of the State of Illinois, with its

principal place of business in Indianapolis, Indiana, and doing business in the State of Ohio, County of Lucas.  At all times herein mentioned, Defendant ELI LILLY designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as ZYPREXA (also known as OLANZAPINE).  At all times relevant, Defendant ELI LILLY caused tortuous injury within Ohio by acts or omissions outside Ohio; regularly did or solicited substantial business within Ohio and the County of Lucas; and derived substantial revenue from goods used or consumed in the State of Ohio, including the County of Lucas.

6.

Plaintiff BARBARA WILSON's physicians prescribed ZYPREXA for treatment of Plaintiff's schizophrenia. Plaintiff Barbara Wilson ingested ZYPREXA from December 6, 2000, until she went into a diabetic coma on February 15, 2001. Plaintiff Barbara Wilson was diagnosed with diabetic ketoacidosis and pancreatitis.   Use and ingestion of ZYPREXA was a substantial factor in causing and the proximate cause of Plaintiff's diabetic coma and her injuries and damages related thereto.

7.

As a direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff BARBARA WILSON suffered injuries all to Plaintiff's general damage in a sum in excess of $10,000.00 and, thus, within the jurisdiction of this Court.

8.

As a direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff BARBARA WILSON was required to, and did, employ physicians and surgeons to examine, treat, and care for her, and therefore Plaintiff incurred medical and incidental expenses.

9.

As a further direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff BARBARA WILSON was prevented from attending to her usual occupation, and

thereby sustained loss of earnings.

10.

ZYPREXA is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of schizophrenia and bipolar mania.

11.

At all times relevant, the DEFENDANTS themselves, or by use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn and otherwise distributed ZYPREXA.

12.

ZYPREXA has been widely advertised by the DEFENDANTS as effective treatment for bipolar disorder and schizophrenia, with fewer adverse side effects than other treatments. The DEFENDANTS further induced physicians to prescribe ZYPREXA for treating disorders for which the FDA had not approved ZYREXA.

13.

The DEFENDANTS, beginning in 1996, aggressively marketed and sold ZYPREXA by falsely misleading potential users about the products and by failing to protect users from serious dangers which the Defendants knew or should have known to result from use of ZYPREXA.

14.

The DEFENDANTS widely and successfully marketed ZYPREXA in the United States, and in the State of Ohio. The DEFENDANTS undertook advertising campaigns promoting the virtues of ZYPREXA in order to induce widespread use of the product. Such advertising campaigns were false, misleading, and failed to disclose or warn potential consumers of the unreasonable risk of harm that results from use of ZYPREXA.

15.

The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently sought to create the image and impression that the use of ZYPREXA, was safe for

human use, had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder and schizophrenia.

16.

The DEFENDANTS, and each of them, purposefully minimized and understated health hazards and risks associated with ZYPREXA. The DEFENDANTS, through promotional literature, deceived potential users of ZYPREXA and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. The DEFENDANTS, falsely and fraudulently withheld relevant information from potential users of ZYPREXA.

17.

Plaintiff is informed, believes, and thereon alleges that total profits from the sale of ZYPREXA exceeds billions of dollars.

18.

At least as early as 1998, the medical literature conclusively revealed data that linked ZYPREXA with causing diabetes and other injuries. An indicative report was published on October 15, 1998, in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." Other numerous reports and studies are prevalent throughout the medical literature from 1998 through the present which detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis, as well as many other undisclosed risks. On July 1, 2002, Duke University Medical Center issued a Press Release about the recent finding that linked ZYPREXA to early onset diabetes. The researchers identified 289 cases of diabetes in patients who had been prescribed ZYPREXA. These findings were published on July 2, 2002 in the medical journal Pharmacotherapy, Vol. 22, No. 7, pages 841-52. The known danger that the DEFENDANTS said product ZYPREXA was causing hyperglycemia and diabetes was never revealed or disclosed by said DEFENDANTS to Plaintiff BARBARA WILSON, nor to her physician who

prescribed the product to Plaintiff. Plaintiff BARBARA WILSON was ignorant of said defect of said product prior to ingesting ZYPREXA.

### 19.

The physician who prescribed ZYPREXA to Plaintiff BARBARA WILSON relied on the representations made to her by the DEFENDANTS, and each of them, prior to the date of prescribing ZYPREXA for use. The physician relied on the representations regarding the safety of ZYPREXA, and would not have recommended for use or prescribed ZYPREXA if she had known the true facts regarding the safety of ZYPREXA.

### 20.

Prior to the date upon which the aforesaid product was prescribed to Plaintiff BARBARA WILSON, the DEFENDANTS knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose. The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, diabetes, ketoacidosis or pancreatitis and other injuries. The DEFENDANTS, and each of them failed to take appropriate action to cure the nature of these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

### 21.

The DEFENDANTS thereby acted with malice towards Plaintiff, who accordingly request that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendants.

**FIRST CAUSE OF ACTION**
[Strict Liability in Tort;
Failure To Warn]

22.

Plaintiff hereby incorporates by reference as if fully set forth herein each and every allegation in paragraphs 1-21, inclusive, of this Complaint.

23.

At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by DEFENDANTS and ingested by Plaintiff BARBARA WILSON. The aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of ZYPREXA, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects. The product was also defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to the user when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended by Defendants, and each of them.

24.

The Defendants, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein.

25.

The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder and/or schizophrenia, involved substantial dangers not readily recognizable by the ordinary user of the product. The Defendants, and each of them failed to warn of the known or knowable likelihood of injury including but not limited to the likelihood the user would develop diabetes, ketoacidosis and/or pancreatitis.

26.

The Defendants designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors by Defendants, and each of them, was further defective due to inadequate post-marketing warning or instruction because, after Defendants, and each of them, knew or should have known of the risks of injury from ZYPREXA, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to diabetes, ketoacidosis and/or pancreatitis.

27.

Plaintiff did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the herein described injuries and damages as herein alleged.

28.

The Defendants, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

29.

Plaintiff neither knew, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defect.

## SECOND CAUSE OF ACTION

### [Strict Products Liability]

30.

Plaintiff hereby incorporates by reference as if fully set forth herein, each and every allegation contained in paragraphs 1 through 29 inclusive, of this Complaint.

31.

The ZYPREXA manufactured and/or supplied by Defendants, and each of them

herein was placed into the stream of commerce by these Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

### 32.

Alternatively, the ZYPREXA manufactured and/or supplied by Defendants, and each of them, was defective in design or formulation in that when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of treatment for bipolar disorder and schizophrenia.

### 33.

The ZYPREXA manufactured and/or supplied by Defendants, and each of them, was defective due to inadequate warning or instruction because the Defendants and each of them knew or should have known that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

### 34.

The ZYPREXA manufactured and/or supplied by Defendants and each of them, was defective due to inadequate warning and/or inadequate testing.

### 35.

The ZYPREXA manufactured and/or supplied by Defendants, and each of them, was defective due to inadequate post-marketing warning or instruction because after the Defendant knew or should have known of the risk of injury from ZYPREXA, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

### 36.

As a proximate and legal result of the defective unreasonably dangerous condition of these products manufactured and/or supplied by Defendants, and each of them, Plaintiff suffered the hereindescribed injuries and damages.

## THIRD CAUSE OF ACTION

### [Negligence]

#### 37.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 36, inclusive, of this Complaint.

#### 38.

At all times herein mentioned, Defendants, and each of them, had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

#### 39.

At all times herein mentioned, Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

#### 40.

The Defendants, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted and supplied the aforesaid products, that it was dangerous and unsafe for the use and purpose for which it was intended.

#### 41.

The Defendants, and each of them, were aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendants knew or should have known that ZYPREXA caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of

Plaintiff BARBARA WILSON.

### 42.

As a result of the carelessness and negligence of Defendants, and each of them, the aforesaid product caused Plaintiff to thereby sustain injuries and damages as herein alleged.

## FOURTH CAUSE OF ACTION
## (AGAINST THE MANUFACTURING DEFENDANTS)
### [Breach of Implied Warranty]

### 43.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 42, inclusive, of this Complaint.

### 44.

At all times mentioned herein, Defendants, and each of them, manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was prescribed to Plaintiff BARBARA WILSON, Defendants impliedly warranted to Plaintiff, and to her agents, that the product was of merchantable quality and safe for the use for which it was intended.

### 45.

Plaintiff BARBARA WILSON and her agents relied on the skill and judgment of the Defendants and each of them, in using the aforesaid product.

### 46.

The product was unsafe for its intended use, and it was not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause the Plaintiff to sustain injuries and damages as herein alleged.

47.

After Plaintiff was made aware that her injuries were a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

## FIFTH CAUSE OF ACTION

### [Breach of Express Warranty]

48.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 47, inclusive, of this Complaint.

49.

The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiff BARBARA WILSON and other members of the general public.

50.

At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.   The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

51.

Plaintiff BARBARA WILSON, and her physicians reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiff BARBARA WILSON and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiff to sustain injuries and damages as herein alleged.

52.

As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendants were notified of the breach of said warranty.

## SIXTH CAUSE OF ACTION

### [Fraud]

53.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 52, inclusive, of this Complaint.

54.

The Defendants falsely and fraudulently represented to Plaintiff BARBARA WILSON, her physicians and members of the general public, that the aforesaid product was safe for use to aid in treating bipolar disorder and schizophrenia. The representations by said Defendants were, in fact, false. The true facts include, but are not limited to the fact that the aforesaid products were not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff BARBARA WILSON.

55.

The representations by said Defendants were, in fact, false. The true facts were that the products were not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to the development of diabetes, ketoacidosis and pancreatitis, that the products caused injuries including but not limited to diabetes, ketoacidosis and pancreatitis, and Defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendants misrepresented the safety of the products, represented that the products marketed were safe for use in bipolar disorder and schizophrenia treatment, and concealed warnings of the known or knowable risks of injury in using the products.

56.

When said Defendants made these representations, they knew that they were false. Defendants made said representations with the intent to defraud and deceive Plaintiff BARBARA WILSON, and with the intent to induce her to act in the manner herein alleged.

57.

At the time Defendants made the aforesaid representations, and at the time Plaintiff BARBARA WILSON took the actions herein alleged, Plaintiff BARBARA WILSON and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff BARBARA WILSON was induced to, and did, use the aforesaid product as herein described. If Plaintiff BARBARA WILSON had known the actual facts, she would not have taken such action. The reliance of Plaintiff BARBARA WILSON and her physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

58.

As a result of Defendants' fraud and deceit, Plaintiff was caused to sustain the herein described injuries and damages.

59.

In doing the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to compensatory damages and, in addition, to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

## SEVENTH CAUSE OF ACTION

### [Negligent Misrepresentation]

60.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 59, inclusive, of this Complaint.

61.

The Defendants had an absolute duty to disclose the true facts regarding the safety of ZYPREXA as the only entities capable of knowing and reporting the true facts regarding the safety and testing of ZYPREXA. Furthermore, Defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

62.

The Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information they could not accurately make the aforesaid representations.

63.

The aforesaid representations were made to the physician prescribing ZYPREXA prior to the date it was prescribed to Plaintiff BARBARA WILSON and the physician relied on those representations about the safety of ZYPREXA when prescribing ZYPREXA to Plaintiff BARBARA WILSON.

64.

At the time the aforesaid representations were made, Defendants concealed from Plaintiff BARBARA WILSON and her physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

65.

The aforesaid representations were made by Defendants with the intent to induce

Plaintiff BARBARA WILSON to act in the manner herein alleged, that is, to ingest ZYPREXA as prescribed.

66.

The Defendants falsely represented to Plaintiff BARBARA WILSON, her physicians and members of the general public, that the aforesaid product was safe for use to aid in treatment of bipolar disorder and schizophrenia. The representations by said Defendants were, in fact, false. The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff BARBARA WILSON and thereby caused her injuries and damages.

67.

The Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information it could not accurately make the aforesaid representation.

68.

At the time Defendants made the aforesaid representations, and at the time ZYPREXA was prescribed to Plaintiff BARBARA WILSON, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff BARBARA WILSON ingested ZYPREXA as herein described. If Plaintiff BARBARA WILSON had known the actual facts, she would not have taken such action. The reliance of Plaintiff BARBARA WILSON and her physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

69.

As a result of Defendants' false representations and concealment, Plaintiff was caused to sustain the herein described injuries and damages.

## EIGHTH CAUSE OF ACTION

### [Fraud By Concealment]

#### 70.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 69, inclusive, of this Complaint.

#### 71.

At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff BARBARA WILSON, and to her physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and how likely it was to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated.  Defendants made the affirmative representations as set forth above to Plaintiff BARBARA WILSON, her physicians and the general public prior to the date ZYPREXA was prescribed to Plaintiff BARBARA WILSON, while concealing the following material facts.

#### 72.

At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff BARBARA WILSON and to her physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but not limited to diabetes, ketoacidosis and/or pancreatitis.

#### 73.

At all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff BARBARA WILSON's physicians and therefore from Plaintiff, with the intent to defraud as herein alleged.

#### 74.

At all times herein mentioned, neither Plaintiff BARBARA WILSON nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product to aid in treatment

of schizophrenia.

75.

As a result of the concealment or suppression of the facts set forth above, Plaintiff sustained injuries and damages as hereinafter set forth.

76.

In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff are therefore entitled to punitive damages in an amount reasonably related to Plaintiff actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

77.

That at all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff BARBARA WILSON's physicians and therefore from Plaintiff, with the intent to defraud Plaintiff as herein• alleged.

78.

At all times herein mentioned, neither Plaintiff BARBARA WILSON nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, that ZYPREXA would not have been prescribed to Plaintiff BARBARA WILSON and she would not have ingested it.

79.

As a result of the concealment or suppression of the facts set forth above, Plaintiff suffered injuries and damages as hereinafter set forth.

80.

In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff are therefore entitled to punitive damages in an amount reasonably related to Plaintiff actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff BARBARA WILSON prays for judgment against Defendants, and each of them, as follows:

1.    For damages for mental, physical, and emotional pain and suffering that she has endured to date and that it is reasonably likely she will endure in the future, in an amount in excess of the minimum jurisdictional limits of this Court and to be proven by evidence at trial;

2.    For past and future medical, hospital, incidental and service expenses in an amount exceeding the minimum jurisdictional limits of this court, and according to proof at trial;

3.    For pre-judgment and post-judgment interest provided by law;

4.    For economic losses according to proof;

5.    For costs of suit herein;

6.    For punitive or exemplary damages against all Defendants in the amount of $25,000,000.00; and

7.    For such other relief as the Court may deem just and proper.

SANDERS, TISMO & ASSOCIATES, P.S.C.
Attorneys at Law
The Charles H. Fisk House
1017 Russell Street
Covington, Kentucky 41011-3052
(859) 491-3000, (859) 655-4642 (fax)

By_____
   ROBERT E. SANDERS, Ohio Bar No. 0024189
   Trial Attorney for Plaintiff, Barbara Wilson

and

By_____
   J. PIERRE TISMO, Ohio Bar No. 0067924
   Trial Attorney for Plaintiff, Barbara Wilson



RECYCLED

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE CITY OF PORTSMOUTH

CAROL WRIGHT, AMINISTRATRIX OF                                    Plaintiff, 03-2891
THE ESTATE OF LATONYA P. WRIGHT, DECEASED,

v.                                                                    *200 Newbridge Cir*
                                                                      *Apt P*
ELI LILLY AND COMPANY,                                                *Richmond VA*
1705 Lilly Corporate Center
Indianapolis, IN 46285
SERVE ON:   National Registered Agents, Inc.
            526 King Street, Suite 423
            Alexandria, Virginia 22314

and

ASTRAZENECA PHARMACEUTICALS, LP,
1800 Concord Pike
Wilmington, DE 19803
SERVE ON:   Secretary of the Commonwealth
            830 East Main Street
            City of Richmond, Virginia

and

PSYCHIATRIC ASSOCIATES OF CHESAPEAKE, P.C.
SERVE ON:   Basnight, Kincer & Leftwich, P.C.
            Registered Agent
            308 Cedar Lakes Drive
            City of Chesapeake, Virginia

and

IGOR MAGIER, M.D.,                                    *300 Medical Pkwy*
c/o Psychiatric Associates of Chesapeake             *Chesapeake, VA  0*
300 Medical Parkway, Suite 214
City of Chesapeake, Virginia

and

MARYVIEW MEDICAL CENTER
d/b/a MARYVIEW BEHAVIORAL MEDICAL CENTER,
SERVE ON:   Richard A. Hanson
            Registered Agent

1

3636 High Street
City of Portsmouth, Virginia

*→ right address*

and

CHURCHLAND PSYCHIATRIC ASSOCIATES, INC.
SERVE ON:  James S. McNider, III
Registered Agent
1800 Nations Bank Center
One Commercial Plaza
City of Norfolk, Virginia

and

E. DANIEL KAY, M.D.                                    Defendants.
c/o Churchland Psychiatric Associates, Inc.
3300 Academy Avenue
City of Portsmouth, Virginia

## MOTION FOR JUDGMENT

The plaintiff moves the Court for judgment against the defendants in the sum of

FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages and FIVE

MILLION DOLLARS ($5,000,000.00) in punitive damages, and costs as hereinafter set

forth:

## COUNT ONE

1.    That the defendant Eli Lilly and Company designed, created,

manufactured, marketed, distributed, delivered, sold, tested and inspected a drug known

as Zyprexa for use by the plaintiff's decedent.

2.    That the aforesaid Zyprexa was defective, dangerous, unreasonably

dangerous, inherently dangerous, unsafe and unsuitable for the use of the plaintiff's

decedent and not of merchantable quality.

3.    That from September 1, 2001 through November 23, 2001, the plaintiff's

decedent was under prescription for and consumed the drug Zyprexa.

2

4.     That the defendant, Eli Lilly and Company negligently designed, created, manufactured, marketed, distributed, delivered, sold, tested and inspected the aforesaid Zyprexa.

5.     That as a direct and proximate result of the negligence of the defendant, Eli Lilly and Company, as aforesaid, the plaintiff's decedent died on November 23, 2001.

6.     That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

7.     That as a direct and proximate result of the negligence of the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

8.     That as a direct and proximate result of the negligence of the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

9.     That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT TWO</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One in the same force and effect as though they were herein fully and specifically set forth in detail.

3

4.     That the defendant negligently failed to warn the plaintiff's decedent of the defective, dangerous, unreasonably dangerous, inherently dangerous, unsafe, unsuitable and unmerchantable condition of the aforesaid Zyprexa.

5.     That as a direct and proximate result of the negligence of the defendant, Eli Lilly and Company, as aforesaid, the plaintiff's decedent died on November 23, 2001.

6.     That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

7.     That as a direct and proximate result of the negligence of the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

8.     That as a direct and proximate result of the negligence of the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

9.     That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT THREE</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One in the same force and effect as though they were herein fully and specifically set forth in detail.

4

4.    That the defendant impliedly warranted that the aforesaid Zyprexa was not defective, dangerous, unreasonably dangerous, or inherently dangerous and that it was safe and suitable for the use of the plaintiff's decedent and that it was of merchantable quality and fit for the intended uses and for the general and particular purposes for which it was designed, manufactured, marketed, distributed, delivered, sold, tested and inspected, and that in fact the aforesaid Zyprexa was defective, dangerous, unreasonably dangerous, inherently dangerous and not safe or suitable for the use of the plaintiff's decedent and was not of merchantable quality and was not fit for the intended uses and for the general and particular purposes for which it was designed, manufactured, marketed, distributed, delivered sold, tested and inspected, and did not comply with the implied warranties made by the defendant, as aforesaid.

5.    That as a direct and proximate result of the breach of implied warranties by the defendant, Eli Lilly and Company, as aforesaid, the plaintiff's decedent died on November 23, 2001.

6.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

6.    That as a direct and proximate result of the breach of implied warranties by the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

6.      That as a direct and proximate result of the breach of implied warranties by the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

7.      That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

COUNT FOUR

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One in the same force and effect as though they were herein fully and specifically set forth in detail.

4.      That the defendant expressly warranted that the Zyprexa was not defective, dangerous, unreasonably dangerous, or inherently dangerous, and it was safe and suitable for the use of the plaintiff's decedent and that it was of merchantable quality and fit for the intended uses and for the general and particular purposes for which it was designed, created, manufactured, marketed, distributed, delivered, sold, tested, and inspected, and that in fact the aforesaid Zyprexa was defective, dangerous, unreasonably dangerous, inherently dangerous, and not safe or suitable for the use of the plaintiff's decedent and was not of merchantable quality and not fit for the intended uses and for the general and particular purposes for which it was designed, created, manufactured, marketed, distributed, delivered, sold, tested and inspected, and did not comply with the express warranties made by the defendant, as aforesaid.

5.      That as a direct and proximate result of the breach of the express warranties by the defendant, Eli Lilly and Company, as aforesaid, the plaintiff's decedent died on November 23, 2001.

6.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

5.    That as a direct and proximate result of the breach of the express warranties by the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

6.    That as a direct and proximate result of the breach of the express warranties by the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

7.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT FIVE</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One in the same force and effect as though they were herein fully and specifically set forth in detail.

4.    That the defendant falsely and fraudulently represented to plaintiff's decedent, her physicians and members of the general public, that the aforesaid product was safe for use to aid in treating bipolar disorder and schizophrenia, as well as treating depression and narcotic withdrawal. The representations by said defendant were, in fact, false. The true facts include, but are not limited to the fact that the aforesaid product was

not safe for said purpose and was, in fact, dangerous to the health and body of plaintiff's decedent.

5.    That the representations by said defendant were, in fact, false. The true facts were that the product was not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the product, including but not limited to the development of diabetes, that the product caused injuries including but not limited to diabetes, and death and defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendant misrepresented the safety of the products, represented that the product marketed was safe for use in bipolar disorder and schizophrenia treatment, as well as for treating depression and narcotic withdrawal, and concealed warnings of the known or knowable risks of injury in using the products.

6.    That when said defendant made these representations, they knew that they were false. Defendant made said representations with the intent to defraud and deceive plaintiff's decedent, and with the intent to induce her to act in the manner herein alleged.

7.    That at the time defendant made the aforesaid representations, and at the time plaintiff's decedent took the actions herein alleged, plaintiff's decedent and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, plaintiff's decedent was induced to, and did, use the aforesaid product as herein described. If plaintiff's decedent had known the actual facts, she would not have taken such action. The reliance of plaintiff's decedent and her physicians upon defendants' representations was justified because said

representations were made by individuals and entities who appeared to be in a position to know the true facts.

8.    That in doing the acts herein alleged, the defendant acted with oppression, fraud, and malice, and plaintiff is therefore entitled to punitive damages to deter defendants and others from engaging in similar conduct in the future.  Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of defendants.

9.    That as a result of defendant's fraud and deceit, plaintiff's decedent died on November 23, 2001.

10.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

11.    That as a direct and proximate result of the fraud and deceit by the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

12.    That as a direct and proximate result of the fraud and deceit by the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

13.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT SIX</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One and paragraph 4 of Count Five in the same force and effect as though they were herein fully and specifically set forth in detail.

5.    That the defendant had an absolute duty to disclose the true facts regarding the safety of Zyprexa as the only entities capable of knowing and reporting the true facts regarding the safety and testing of Zyprexa.  Furthermore, the defendant had a duty to ensure it had a reasonable basis for making the representations as set forth above.

6.    That the defendant made the aforesaid representations with no reasonable ground for believing them to be true.  It did not have accurate or sufficient information concerning these representations.  Furthermore, defendant was aware that without such information they could not accurately make the aforesaid representations.

7.    That the aforesaid representations were made to the physician prescribing Zyprexa prior to the date it was prescribed to plaintiff's decedent and the physician relied on those representations about the safety of Zyprexa when prescribing Zyprexa to the plaintiff's decedent.

8.    That at the time the aforesaid representations were made, defendant concealed from plaintiff's decedent and his physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

9.    That the aforesaid representations were made by the defendant with the intent to induce plaintiff's decedent to act in the manner herein alleged, that is, to ingest Zyprexa as prescribed.

10

10.    That at the time defendant made the aforesaid representations, and at the time Zyprexa was prescribed to plaintiff's decedent, plaintiff's decedent and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true.   In reliance upon said representations, plaintiff's decedent ingested Zyprexa as herein described.   If plaintiff's decedent had known the actual facts, she would not have taken such action.   The reliance of plaintiff's decedent and her physicians upon defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

11.    That as a result of defendant's misrepresentations, plaintiff's decedent died on November 23, 2001.

12.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

13.    That as a direct and proximate result of the misrepresentations by the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

14.    That as a direct and proximate result of the misrepresentations by the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

15.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

11

<u>COUNT SEVEN</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One and paragraphs 4 of Count 5 in the same force and effect as though they were herein fully and specifically set forth in detail.

5.    That at all times mentioned herein, defendants had the duty and obligation to disclose to plaintiff's decedent, and to her physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and how likely it was to cause serious consequences to users, including injuries and death as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendants made the affirmative representations as set forth above to plaintiff's decedent, her physicians and the general public prior to the date Zyprexa was prescribed to plaintiff's decedent, while concealing the following material facts.

6.    That at all times mentioned herein, defendants had the duty and obligation to disclose to plaintiff's decedent and to her physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but not limited to diabetes.

7.    That at all times herein mentioned, defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from plaintiff's decedent's physicians and therefore from plaintiff's decedent, with the intent to defraud as herein alleged.

8.    That at all times herein mentioned, neither plaintiff's decedent nor her physicians were aware of the facts set forth above, and had they been aware of said facts,

12

they would not have acted as they did, that is, would not have utilized the product to aid in treatment of narcotic withdrawal.

9.     That in doing the action herein alleged, defendants acted with oppression, fraud, and malice and plaintiff is therefore entitled to punitive damages in an amount reasonably related to plaintiff's actual damages, and to defendants' wealth, and sufficiently large to be an example to others, and to deter these defendants and others from engaging in similar conduct in the future.

10.     That as a result of the fraud by concealment set forth above, plaintiff's decedent died on November 23, 2001.

11.     That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

12.     That as a direct and proximate result of the fraud by concealment by the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

13.     That as a direct and proximate result of the fraud by concealment by the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

14.     That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

13

## COUNT EIGHT

1.    That the defendant AstraZeneca Pharmaceuticals, LP designed, created, manufactured, marketed, distributed, delivered, sold, tested and inspected a drug known as Seroquel for use by the plaintiff's decedent.

2.    That the aforesaid Seroquel was defective, dangerous, unreasonably dangerous, inherently dangerous, unsafe and unsuitable for the use of the plaintiff's decedent and not of merchantable quality.

3.    That from September 18, 2001 through November 23, 2001, the plaintiff's decedent was under prescription for the drug Seroquel.

4.    That the defendant, AstraZeneca Pharmaceuticals, LP negligently designed, created, manufactured, marketed, distributed, delivered, sold, tested and inspected the aforesaid Seroquel.

5.    That as a direct and proximate result of the negligence of the defendant, AstraZeneca Pharmaceuticals, LP, as aforesaid, the plaintiff's decedent died on November 23, 2001.

6.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

7.    That as a direct and proximate result of the negligence of the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

8.    That as a direct and proximate result of the negligence of the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

9.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT NINE</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One in the same force and effect as though they were herein fully and specifically set forth in detail.

4.    That the defendant negligently failed to warn the plaintiff's decedent of the defective, dangerous, unreasonably dangerous, inherently dangerous, unsafe, unsuitable and  unmerchantable condition of the aforesaid Seroquel.

5.    That as a direct and proximate result of the negligence of the defendant, as aforesaid, the plaintiff's decedent died on November 23, 2001.

6.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

7.    That as a direct and proximate result of the negligence of the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

15

8.    That as a direct and proximate result of the negligence of the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

9.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT TEN</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One in the same force and effect as though they were herein fully and specifically set forth in detail.

4.    That the defendant impliedly warranted that the aforesaid Seroquel was not defective, dangerous, unreasonably dangerous, or inherently dangerous and that it was safe and suitable for the use of the plaintiff's decedent and that it was of merchantable quality and fit for the intended uses and for the general and particular purposes for which it was designed, created, manufactured, marketed, distributed, delivered, sold, tested and inspected, and that in fact the aforesaid Seroquel was defective, dangerous, unreasonably dangerous, inherently dangerous and not safe or suitable for the use of the plaintiff's decedent and was not of merchantable quality and was not fit for the intended uses and for the general and particular purposes for which it was designed, created, manufactured, marketed, distributed, delivered sold, tested and inspected, and did not comply with the implied warranties made by the defendant, as aforesaid.

5.    That as a direct and proximate result of the breach of the implied warranties by the defendant, as aforesaid, the plaintiff's decedent died on November 23, 2001.

6.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

7.    That as a direct and proximate result of the breach of the implied warranties by the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

8.    That as a direct and proximate result of the breach of the implied warranties by the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

9.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT ELEVEN</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One in the same force and effect as though they were herein fully and specifically set forth in detail.

4.    That the defendant expressly warranted that the Seroquel was not defective, dangerous, unreasonably dangerous, or inherently dangerous, and it was safe and suitable for the use of the plaintiff's decedent and that it was of merchantable quality

17

and fit for the intended uses and for the general and particular purposes for which it was designed, created, manufactured, marketed, distributed, delivered, sold, tested, and inspected, and that in fact the aforesaid Seroquel was defective, dangerous, unreasonably dangerous, inherently dangerous, and not safe or suitable for the use of the plaintiff's decedent and was not of merchantable quality and not fit for the intended uses and for the general and particular purposes for which it was designed, created, manufactured, marketed, distributed, delivered, sold, tested and inspected, and did not comply with the express warranties made by the defendant, as aforesaid.

5.      That as a direct and proximate result of the breach of express warranties by the defendant, as aforesaid, the plaintiff's decedent died on November 23, 2001.

6.      That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

7.      That as a direct and proximate result of the breach of the express warranties by the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

8.      That as a direct and proximate result of the breach of the express warranties by the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

9.      That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

18

## COUNT TWELVE

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One in the same force and effect as though they were herein fully and specifically set forth in detail.

4.      That the defendants falsely and fraudulently represented to plaintiff's decedent, her physicians and members of the general public, that the aforesaid product was safe for use to aid in treating bipolar disorder and schizophrenia, as well as treating depression and narcotic withdrawal. The representations by said defendants were, in fact, false. The true facts include, but are not limited to the fact that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of plaintiff's decedent.

5.      That the representations by said defendants were, in fact, false. The true facts were that the product was not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the product, including but not limited to the development of diabetes, that the product caused injuries including but not limited to diabetes, and death and defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendants misrepresented the safety of the products, represented that the product marketed was safe for use in bipolar disorder and schizophrenia treatment, as well as for treating depression and narcotic withdrawal, and concealed warnings of the known or knowable risks of injury in using the products.

6.      That when said defendants made these representations, they knew that they were false. Defendant made said representations with the intent to defraud and

19

deceive plaintiff's decedent, and with the intent to induce her to act in the manner herein alleged.

7.    That at the time defendant made the aforesaid representations, and at the time plaintiff's decedent took the actions herein alleged, plaintiff's decedent and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true.  In reliance upon said representations, plaintiff's decedent was induced to, and did, use the aforesaid product as herein described.  If plaintiff's decedent had known the actual facts, she would not have taken such action.  The reliance of plaintiff's decedent and her physicians upon defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

8.    That in doing the acts herein alleged, the defendant acted with oppression, fraud, and malice, and plaintiff is therefore entitled to punitive damages to deter defendants and others from engaging in similar conduct in the future.  Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of defendants.

9.    That as a result of defendant's fraud and deceit, plaintiff's decedent died on November 23, 2001.

10.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

11.    That as a direct and proximate result of the fraud and deceit by the defendants, as aforesaid, the beneficiaries have suffered damages including but not

limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

12.     That as a direct and proximate result of the fraud and deceit by the defendants, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

13.     That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT THIRTEEN</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One and paragraph 4 of Count Twelve in the same force and effect as though they were herein fully and specifically set forth in detail.

5.     That the defendant had an absolute duty to disclose the true facts regarding the safety of Seroquel as the only entities capable of knowing and reporting the true facts regarding the safety and testing of Seroquel.  Furthermore, defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

6.     That the defendants made the aforesaid representations with no reasonable ground for believing them to be true.  It did not have accurate or sufficient information concerning these representations.  Furthermore, defendant was aware that without such information they could not accurately make the aforesaid representations.

7.     That the aforesaid representations were made to the physician prescribing Seroquel prior to the date it was prescribed to plaintiff's decedent and the physician relied

on those representations about the safety of Seroquel when prescribing Seroquel to the plaintiff's decedent.

8.    That at the time the aforesaid representations were made, defendants concealed from plaintiff's decedent and his physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

9.    That the aforesaid representations were made by the defendant with the intent to induce plaintiff's decedent to act in the manner herein alleged, that is, to ingest Seroquel as prescribed.

10.    That at the time defendant made the aforesaid representations, and at the time Seroquel was prescribed to plaintiff's decedent, plaintiff's decedent and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true.    In reliance upon said representations, plaintiff's decedent ingested Seroquel as herein described.    If plaintiff's decedent had known the actual facts, she would not have taken such action.    The reliance of plaintiff's decedent and her physicians upon defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

11.    That as a result of defendant's misrepresentations and concealment, plaintiff's decedent died on November 23, 2001.

12.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

13.    That as a direct and proximate result of the misrepresentations by the defendants, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

14.    That as a direct and proximate result of the misrepresentations by the defendants, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

15.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT FOURTEEN</u>

The plaintiff repeats, realleges and repleads all of the allegations in paragraphs numbered 1 through 3 inclusive of Count One and paragraph 4 of Count Thirteen in the same force and effect as though they were herein fully and specifically set forth in detail.

5.    That at all times mentioned herein, defendant had the duty and obligation to disclose to plaintiff's decedent, and to her physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and how likely it was to cause serious consequences to users, including injuries and death as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendants made the affirmative representations as set forth above to plaintiff's decedent, her physicians and the general public prior to the date Seroquel was prescribed to plaintiff's decedent, while concealing the following material facts.

23

6.    That at all times mentioned herein, defendant had the duty and obligation to disclose to plaintiff's decedent and to her physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but not limited to diabetes.

7.    That at all times herein mentioned, defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from plaintiff's decedent's physicians and therefore from plaintiff's decedent, with the intent to defraud as herein alleged.

8.    That at all times herein mentioned, neither plaintiff's decedent nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product to aid in treatment of narcotic withdrawal.

9.    That in doing the action herein alleged, defendant acted with oppression, fraud, and malice and plaintiff is therefore entitled to punitive damages in an amount reasonably related to plaintiff's actual damages, and to defendants' wealth, and sufficiently large to be an example to others, and to deter these defendants and others from engaging in similar conduct in the future.

10.    That as a result of the fraud by concealment of the facts set forth above, plaintiff's decedent died on November 23, 2001.

11.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

12.    That as a direct and proximate result of the fraud by concealment by the defendant, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

13.    That as a direct and proximate result of the fraud by concealment by the defendant, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

14.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

COUNT FIFTEEN

1.    That at all times hereinafter mentioned, the defendant, E. Daniel Kay, M.D. was the agent, servant and employee of the defendant, Churchland Psychiatric Associates, acting within the scope of and during the course of his employment with Churchland Psychiatric Associates.

2.    That from August 31 through September 2, 2001, the plaintiff's decedent was a patient at the defendant, Maryview Behavioral Medical Center, under the care and treatment of the defendant, E. Daniel Kay, M.D. for psychological problems.

3.    That the defendants, Maryview Behavioral Medical Center and E. Daniel Kay, M.D. negligently diagnosed, treated and cared for the plaintiff's decedent, including but not limited to negligently prescribing the drug Zyprexa, negligently monitoring the effects of the drug Zyprexa, and were otherwise negligent.

4.    That as a direct and proximate result of the negligence of the defendants, Maryview Behavioral Medical Center and E. Daniel Kay, M.D., as aforesaid, the plaintiff's decedent died on November 23, 2001.

5.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

6.    That as a direct and proximate result of the negligence of the defendants, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

7.    That as a direct and proximate result of the negligence of the defendants, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

8.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

<u>COUNT SIXTEEN</u>

1.    That at all times hereinafter mentioned, the defendant, Igor Magier, M.D. was the agent, servant and employee of the defendant, Psychiatric Associates of Chesapeake, acting within the scope of and during the course of his employment with Psychiatric Associates of Chesapeake.

26

2.    That from September 4, 2001 through her death on November 23, 2001, the plaintiff's decedent was a patient of the defendant, Igor Magier, M.D., for psychological problems.

3.    That the defendants, Psychiatric Associates of Chesapeake and Igor Magier, M.D., negligently diagnosed, treated and cared for the plaintiff's decedent, including but not limited to prescribing the drugs Zyprexa and Seroquel, negligently failed to monitor the effects of said drugs, negligently failed to warn the plaintiff's decedent of the consequences of said drugs, and the defendants were otherwise negligent.

4.    That as a direct and proximate result of the negligence of the defendants, Psychiatric Associates of Chesapeake and Igor Magier, M.D., as aforesaid, the plaintiff's decedent died on November 23, 2001.

5.    That the beneficiaries of the estate of the plaintiff's decedent are:

Carol Wright

Sam Jones

6.    That as a direct and proximate result of the negligence of the defendants, as aforesaid, the beneficiaries have suffered damages including but not limited to sorrow, mental anguish and solace, including the society, companionship, comfort, guidance, kindly offices and advice of the decedent, and services, protection, care and assistance provided by the decedent.

7.    That as a direct and proximate result of the negligence of the defendants, as aforesaid, the estate of the plaintiff's decedent has incurred expenses for medical bills and reasonable funeral expenses.

27

8.    That on or about January 29, 2002, Carol Wright qualified as Administratrix of the estate of the Estate of Latonya P. Wright.

WHEREFORE, the plaintiff demands judgment against the defendants in the sum of FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages and FIVE MILLION DOLLARS ($5,000,000.00) in punitive damages, prejudgment interest from the date of the accident, and costs for damages resulting as aforesaid.

TRIAL BY JURY IS DEMANDED.

CAROL WRIGHT, AMINISTRATRIX
OF THE ESTATE OF
LATONYA P. WRIGHT, DECEASED


By Counsel


William B. Kilduff, VSB#16665
EMROCH & KILDUFF, LP
3600 W. Broad Street, Suite 700
P. O. Box 6875
Richmond, VA  23230-0856
Phone (804) 358-1568
Fax (804) 353-5817


Mark E. Burton, Jr., Esquire
Rachel Abrams, Esquire
HERSH AND HERSH
601 Van Ness Ave., Suite 2080
San Francisco, CA  94102-6396